[S. F. No. 546. In Bank.—July 16. 1898.]

HELENA SEYMOUR, Respondent, v. MARGARET McAVOY et al., Appellants.

Creditor's Bill—Equitable Lien—Priority—Parties.—A judgment creditor, by filing a bill to subject equitable assets to the payment of his judgment, acquires an equitable lien on such assets, and a priority over any other creditor who has not already filed such a bill. Other judgment creditors who have not filed such a bill, are not necessary parties to the action, and it is not error to refuse to bring them in as parties thereto.

Trust Under Will—Support of Beneficiaries—Estate Vested Prior to Code—Rules of Common Law.—Where the estate of the trustees of a trust created under a will, and the rights of beneficiaries to support out of the income of the trust estate, were vested by the death of

the testator prior to the adoption of the codes, the provisions of the Civil Code cannot have any retroactive effect to divest any of their rights. There being no statute in force upon the subject at the testator's death, the case must be decided in accordance with the rules of the common law; and in ascertaining those rules resort may be had as well to the decisions in other states possessing the common law, as to those of the English courts.

ID.—SUPPORT OUT OF INCOME—NONSUBJECTION TO CREDITORS.—By the great weight of authority in America, it is settled that the author of a trust to pay or apply for the benefit of another the income of property or a portion of such income, may lawfully provide that the interest of the beneficiary shall not be assignable, or shall not be subject to the claims of creditors. Such provision need not be express; but may be implied from the general intention of the donor, to be gathered from the terms of the trust, in the light of all the circumstances.

ID.—SUPPORT OF WIDOW AND DAUGHTERS—CONTINGENT INTERESTS—ACCUMULATION OF INCOME—DISCRETION OF TRUSTEE—IMPLICATION AS TO CREDITORS. Where by the terms of a will establishing trusts, the only right of the widow is to a support for life out of one-half of the income, and the only right of each of the daughters of the testator is to a like support out of one-fourth of the income until her marriage, and to a contingent interest in one-fourth of the property, contingent upon her marriage, and in another fourth, contingent upon surviving her mother, and where, until those events occur, the trustees must accumulate the surplus income, and if neither of them occur, the property and accumulations are to be otherwise disposed of, and no sums out of the income are directed to be paid for the support of the widow or daughters, but the trustee himself is to expend the money, a provision that the interests of the beneficiaries shall not be subject to the claims of creditors is implied from the terms of the will; and no creditor of the widow or of either of the daughters can take any part of the income for their support without defeating the trust for that purpose, nor can any creditor of either daughter reach her contingent interests, which may never exist, nor take away any part of the surplus of the income, without defeating the trust for accumulation.

ID.—VALIDITY OF TRUST—DECREE OF DISTRIBUTION.—A decree of distribution to trustees named in the will of a deceased person in pursuance of the provisions of the trust is conclusive as to the validity of the trust, and of all of its provisions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, for Appellants.

Wickliffe Matthews, and D. E. Alexander, for Respondent.

VAN FLEET, J.—On the first day of January, 1869, William McAvoy died, leaving surviving him his widow, the defendant Margaret, and two minor children, the defendants Emma and Delia. He left a will which was admitted to probate on the twenty-seventh day of January, 1869, by the probate court of the city and county of San Francisco, of which the material portions are as follows:

"Item. I give, devise, and bequeath all my property of every name, nature, and kind to my executors aforesaid in trust, to manage and control the same, and to keep the same invested for the following purposes:

"1st. To provide out of the income thereof for the comfortable support and maintenance of my beloved wife (it being my desire and wish that she shall convey and release to said executors all her interest in my estate and in the community property, and upon her doing so she is to be provided with such support and maintenance) as one-half of such income will provide.

"2nd. To provide out of said income for the support and education of my two daughters. . . . .

"4th. To accumulate such income until the death of my beloved wife, or until one or both of my said daughters shall marry. Upon the marriage of either daughter to make over to her, as her separate estate, one-fourth of the estate then in the hands of said trustees, and upon the marriage of the other daughter to make over a like proportion, and upon the death of my beloved wife to transfer and make over a like residue of the estate to my said daughters share and share alike, or the children of the one which may die before her said mother's death."

On January 11, 1869, the defendant Margaret, in pursuance of the request expressed in the will, conveyed to the executors all her interest in the property in trust to carry out the provisions of said will. The court found, however, that William McAvoy died seised in fee of the property in question, and it follows that the defendant Margaret had no interest in the property except such, if any, as she may have derived under the will.

On July 21, 1876, a decree of final distribution was entered, by which the property was distributed to the trustees named in the will (of whom the defendant Byrne is now the sole survivor), to have, hold, and dispose of in accordance with the terms and provisions of said will.

On April 27, 1887, the defendant Delia married, and the trustee thereupon conveyed to her one undivided fourth of said property in accordance with the terms of the will. Both of said daughters were of full age at the time of the recovery of plaintiff's judgment, hereinafter mentioned, and their education had been completed.

On September 27, 1893, the plaintiff recovered a judgment against the defendants Margaret and Emma for upwards of three thousand dollars, on which an execution was issued and returned wholly unsatisfied. Thereupon the plaintiff brought this action against the trustee and the beneficiaries under the will to subject the interest of the defendants Margaret and Emma in the trust property to the satisfaction of her judgment. The court found that the sum of one hundred dollars per month was sufficient for the support and maintenance of each of the defendants Margaret and Emma, and gave judgment directing the trustee to pay to each of said defendants out of three-fourths of the net income of the property the sum of one hundred dollars per month, and to pay the whole of the residue of said three-fourths to the plaintiff in satisfaction of her judgment.

On the trial, it was shown that certain third persons were creditors of said defendants Margaret and Emma, and that some of them had reduced their debts to judgment; and the defendant Byrne moved to have said persons brought in as parties to this action, which motion was denied by the court.

1. A judgment creditor, by filing a bill in equity to subject equitable assets to the payment of his judgment, acquires an equitable lien on such assets and a priority over any other creditor who has not already filed such a bill. Other judgment creditors who have not filed such a bill are therefore not necessary parties to the action, and their presence is not necessary for the protection of the defendants. The court, therefore, did not err in refusing to bring in as parties other judgment creditors who had not themselves commenced any such suit.

2. The only question of importance in the case is whether the defendants Margaret and Emma have any interest in the property or income in question which can be subjected to the claims of their creditors. We think it clear that they have no such interest.

It must be noticed at the outset that the provisions of the Civil Code cannot affect this case. The estate of the trustee and the rights of the beneficiaries vested on the death of the testator in 1869, and the code is not and could not constitutionally be retroactive so as to divest any of their rights. As there was not at the testator's death any statute in force in this state on the subject, this case must be decided in accordance with the rules of the common law; and in ascertaining those rules we may look as well to the decisions in other states of this Union possessing the common law, as to those of the English courts. (*Lux v. Haggin*, 69 Cal. 384, 385.)

By the great weight of authority in America, it is settled that the author of a trust to pay to or apply for the benefit of another the income of property, or a portion of such income, may lawfully provide that the interest of the beneficiary shall not be assignable, or shall not be subject to the claims of his creditors. Out of the many decisions to this effect we may refer to *Nichols v. Eaton*, 91 U. S. 716, 725; *Steib v. Whitehead*, 111 Ill. 247; *Broadway Bank v. Adams*, 133 Mass. 170; 43 Am. Rep. 504; *Roberts v. Stevens*, 84 Me. 325, 331; *Lampert v. Haydel*, 96 Mo. 439, 446; 9 Am. St. Rep. 358; *Jourolmon v. Messengill*, 86 Tenn. 81, 100; *Garland v. Garland*, 87 Va. 758; 24 Am. St. Rep. 682; *Overman's Appeal*, 88 Pa. St. 276, 284; *Maryland etc. Agency v. Lee*, 72 Md. 161; *Wallace v. Campbell*, 53 Tex. 229; *Wales v. Bowdish*, 61 Vt. 23.

It is also well settled in the jurisdictions where this doctrine prevails that such provisions need not be express, but may be implied from the general intention of the donor, to be gathered from the terms of the trust, in the light of all the circumstances. (*Baker v. Brown*, 146 Mass. 369; *Pope v. Elliott*, 8 B. Mon. 56; *Roberts v. Stevens, supra; Wales v. Bowdish, supra.*)

The decisions in England and in some of the American states limit this doctrine to cases where there is an express provision

for a lesser or limitation of the estate upon any alienation, or upon bankruptcy, levy of execution, or the like. But we think that the rule established by the decisions we have cited is more consonant with the rules of law and with the principles of reason. Alienability is not an essential attribute of an equitable life estate in property; and there is nothing in the policy of the law prohibiting a donor from providing that his bounty shall be enjoyed only by those to whom he intends to extend it, and that property devoted by him to a trust otherwise valid shall not be diverted from its appointed destination.

The will in question does not in terms provide that the interest of the beneficiaries shall not be subject to the claims of their creditors; but its provisions lead to that result by an implication equally strong. By the legal effect of this instrument the entire property is devised to the executors in trust: 1. To provide out of one-half of the income thereof for the comfortable support and maintenance of the testator's widow, and to provide out of said income for the support and education of his two daughters; 2. To accumulate the surplus of one-half of said income after providing for the support and maintenance of the widow until her death, and to accumulate the remaining half thereof after providing for the support and education of the daughters—one-half of said half until one of the daughters should marry, and the other half of said half until the other daughter should marry; 3. To transfer to each of the daughters upon her marriage one-fourth of the trust property, with one-half of the accumulations of one-half of the income; and 4. Upon the death of the widow, to transfer to each of the daughters, or to the children of either of them deceased at that time, one-fourth of the trust property, with one-half of the accumulations of the other half of the income. Under these provisions the only right of the widow is to have the trustee support her during her life out of one-half of the income; and the only right of the defendant Emma, until her marriage, is to have a like support out of one-fourth of the income. No sums whatever are directed to be paid to either of them during those periods, but the trustee is himself to expend the money for their support. Of course, therefore, no creditor could take any part of the income so appropriated for their

support, without entirely defeating the provision for that purpose. It is plain, therefore, that under no circumstances can any creditor of the defendant Margaret take any portion of this property; for she has no interest in it present or prospective, except the right to be supported during her life, which right could not be reached by a creditor without defeating the trust. (*Johnston v. Zane*, 11 Gratt. 552, 569.)

Nor does the creditor of defendant Emma stand in any better position. Beside her right to a support, which for the reasons shown cannot be impaired, the only interests she has are a right to one-fourth of the property contingent upon her marriage, and a right to another fourth thereof contingent upon her surviving her mother. Until those events occur, the trustee must continue to accumulate the surplus income, for neither of them may ever occur, and, if they do not occur, the accumulation, as well as the corresponding share of the *corpus* of the property, will belong to some other person. No part of this surplus can, therefore, be taken by a creditor without defeating the trust for accumulation. An express provision in the will restraining alienation voluntary or involuntary, would, therefore, have been no stronger than the necessary implication derived from the purposes to which the property is directed to be applied.

We have not been referred to any rule of law, as it stood before the enactment of the code, which is contravened by any provision in this will, and we cannot see any infirmity in any of those provisions. They would be valid even under the English rule (*Chambers v. Smith*, L. R. 3 App. Cas. 795); and, even if they had been for any reason invalid, such invalidity could not now defeat the will, for the decree of distribution is conclusive of the validity of all of its provisions. (Code Civ. Proc., secs. 1666, 1908; *William Hill Co. v. Lawler*, 116 Cal. 359; *Greenwood v. Murray*, 26 Minn. 259.) It follows that the plaintiff is not entitled to subject the property in question to her judgment.

This conclusion renders it unnecessary to consider the other questions argued, and, as the facts appear on the face of the findings, no new trial will be required.

The judgment and order appealed from are reversed and the

cause remanded, with directions to the court below to set aside its conclusions of law, and to enter judgment upon the findings in favor of the defendants.

Harrison, J., Garoutte, J., and McFarland, J., concurred.

TEMPLE, J., dissenting.—I dissent. If it be held that the case is not governed by the code provision, then the rule of the common law must prevail. At common law these so-called spendthrift trusts were held invalid—the rule being as was expressed in *Brandon v. Robinson,* 18 Ves. 429: "Certainly no man shall have an estate to live on but not an estate to pay his debts with. Certainly property available for the purposes of pleasure or profit shall be also amenable to the demands of justice."

It is said that the American rule of decision is in favor of the validity of such trusts. I doubt this. Certainly in many states the English rule has been approved. In some the matter is controlled by statute. (See 23 Am. & Eng. Ency. of Law, 10.)

In *Nichol v. Levy,* 5 Wall. 441, it is said: "It is a settled rule of law that the beneficial interest of the *cestui que trust,* whatever it may be, is liable for the payment of his debts. It cannot be so fenced about by inhibitions and restrictions as to secure it the inconsistent characteristics of right and enjoyment to the beneficiary and immunity from his creditors," etc.

Such estates are contrary to the policy of our laws which provide means of subjecting the property of all to the satisfaction of their obligations. Such trusts enable one by his own act to make property exempt from execution, and violate our ideas of equality and fair play. If there is a conflict in the authorities and we are free to choose, I think the English rule by far most conformable to justice and good policy.

I think, also, that the opinion is at variance with the very recent decision in the matter of the *Estate of Cavarly,* 119 Cal. 406.

Rehearing denied.