[Civ. No. 948. Fourth Appellate District.—March 17, 1932.]

SAN DIEGO TRUST & SAVINGS BANK (a Corporation), as Executor, etc., Respondent, v. ANNA HEUSTIS, Appellant.

676

Jesse George and Nottley S. Hammack for Appellant.

John A. Hewicker for Respondent.

LAMBERT, J., *pro tem.*—The material facts leading up to this appeal are briefly: Robert J. Heustis and Anna

Heustis, defendant and appellant herein, were married in the year 1919. This marriage has never been dissolved. In the month of August, 1928, the appellant, Anna Heustis, brought an action against Robert J. Heustis in the Superior Court of San Diego County, and obtained a judgment against him for her support and maintenance in the sum of $100 per month. Nothing was ever paid on this judgment except $50. The said Robert J. Heustis, soon after the suit was filed, left the state of California and went to the state of Texas and located at El Paso. He took whatever property he had with him. After approximately $2,400 had accumulated on this judgment, and on the twenty-sixth day of May, 1930, Caroline Heustis, the mother of Robert J. Heustis, made her last will and testament. In this will she created what is commonly known as a "spendthrift trust" in favor of her only son and heir, the said Robert J. Heustis. The San Diego Trust and Savings Bank, respondent herein, was made the executor and trustee under this will. Caroline Heustis died on November 28, 1930; her estate amounted to approximately $33,000 which consisted of about $9,000 cash, Texas bridge bonds of the value of $10,000 and the real property situated in the state of Texas of the value of about $14,000. The will of the deceased, omitting therefrom the attestation clause, was in words and figures following:

"Last Will and Testament

"I, Caroline Heustis, a widow of the age of seventy years, residing in the City of San Diego, county of San Diego, State of California, and being of sound and disposing mind and memory and not acting under duress, menace, fraud or undue influence of any person whomsoever, do make, publish and declare this my last Will and Testament, and do hereby expressly revoke all other and former Wills and Codicils to Wills by me made.

"First: I hereby direct my executor hereinafter named to pay all my just debts and funeral expenses as soon after my demise as can be lawfully and conveniently done.

"Second: I hereby give, devise and bequeath all the rest, residue and remainder of my estate, both real, personal and mixed, of whatsoever kind or character, and wheresoever situated, to the San Diego Trust & Savings Bank, a corporation, of San Diego, California, to be held in trust for the following uses and purposes, in relation to the same:

"(a) That the said Trustee shall pay to my son, Robert J. Heustis, from the income or principal, or both; of the said trust estate, One Hundred Fifty Dollars ($150.00) each calendar month during the life of this trust.

"(b) The beneficiary under this trust is hereby restrained from, and is and shall be without right, power and authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate or in any other manner affect or impair his beneficial and legal rights, titles, interests, claims and estates in and to the income and/or principal of this trust during the entire term thereof, nor shall the rights, titles, interests and estates of the said beneficiary hereunder be subject to the rights or claims of creditors of the said beneficiary nor subject nor liable to any process of law or court, and all of the income and/or principal under this trust shall be transferable, payable and deliverable only, solely, exclusively and personally to the above designated beneficiary hereunder at the time entitled to take the same under the terms of this trust, and the personal receipt of the designated beneficiary hereunder shall be a condition precedent to the payment or delivery of the same by the said Trustee to such beneficiary.

"(c) Ten years (10) from the date of the filing of this will for probate, this trust shall *ipso facto* cease and determine, and the entire trust estate shall go and be by said Trustee conveyed, transferred and delivered in fee to the said Robert J. Heustis.

"(d) Said Trustee shall exclusively manage said estate and it may sell, exchange or otherwise dispose of such securities as I may now own, or it may, in its discretion, retain and hold so long as it deems desirable any property which it may receive from my estate. However, the said Trustee shall not invest any of the estate in any securities not permissible by law for savings bank investments.

"(e) That all fees and compensation payable to said trustee shall be fixed by the Superior Court of the County of San Diego, State of California.

"Third: Should my son, Robert J. Heustis, die during the lifetime of this trust herein created, then and in that event this trust shall *ipso facto* cease and terminate, and all of said remaining property and residue thereof shall be distributed as follows:

"(a) One Thousand dollars ($1,000.00) to Harold Warren Holland.

"(b) One Thousand Dollars ($1,000.00) to Ida Whelan.

"(c) All the rest, residue and remainder unto my nieces, Lizzie and Lulu Zachman, 234 Lafitte, San Antonio, Texas, share and share alike.

"Fourth: I hereby nominate and appoint the San Diego Trust and Savings Bank, a corporation of the City of San Diego, County of San Diego, State of California, the executor of this my Last Will and Testament.

"In Witness Whereof I have hereunto set my hand and seal this 26th day of May, 1930, in the City of San Diego, County of San Diego, State of California.

"Caroline Heustis."

On December 28, 1930, an execution was issued out of the superior court for the sum of $2,650, then due on the judgment. This execution was levied on the executor and trustee under the will, the respondent herein, on February 24, 1931. The respondent made the return that it had no property belonging to the said Robert J. Heustis, the respondent, and then filed an action for declaratory relief against Anne Heustis asking the court to determine whether the said Anna Heustis had a right to satisfy said judgment out of property in its hands as a trustee. The complaint alleged, in substance:

"(1) The Corporate existence of the plaintiff.

"(2) Joinder of fictitious defendants.

"(3) The death of Caroline Heustis leaving Last Will and Testament.

"(4) Petition for probate of Will.

"(5) Admission of Will to probate after due notice.

"(6) Inventory filed showing estate to be of approximate value of $24,000. (Some property came into the hands of trustee after inventory was filed.)

"(7) Expenses and claims, costs of administration; general terms of spendthrift clause set out.

"(8) The levy of execution on the plaintiff.

"(9) Negative return by the plaintiff to the sheriff.

"(10) Threat of Anna Heustis to make plaintiff pay the judgment.

"(11) Assertion that the claims of defendant were without any right."

To this complaint the said Anna Heustis filed an answer. The second amended answer contained two parts: What is called the "First separate defense and claim for affirmative relief" admitted, denied and alleged in paragraphs as follows: (1) Admitted paragraphs 1, 8 and 10 of the complaint; (2) denied everything not admitted; (3) admitted paragraphs 3, 4 and 5 of the complaint; (4) admits inventory returned but denied it contained all the assets of the estate and sets forth that a lot worth $2,000 in Pacific Beach, California, had been transferred to one Ida Wheeler; (5) denies $1800 is the true amount of the claims and expenses of administration; denies will cuts off the wife; (6) denies plaintiff and executor has no property belonging to the beneficiary Robert J. Heustis, and alleges the trust under the will is void; (7) sets forth the marriage of Robert J. Heustis and Anna Heustis, his abandonment of her and her obtaining a judgment against Robert J. Heustis and that Robert J. Heustis took all of his property to Texas, where it still is; the attorneys for Robert J. Heustis and the mother are the same; (8) alleges that the return of respondent on garnishment is false in that the property of the estate is subject to garnishment.

"Second and Separate defense" alleges in numbered paragraphs, as follows: (1) Makes all allegations, denials and admissions contained in paragraphs 1, 2, 4, 6 and 8 of the first defense; (2) denies that the document is in fact the last will and testament of Caroline Heustis; denies the will is entitled to be admitted to probate, but does not deny that it was admitted and alleges testatrix was of unsound mind; (3) denies plaintiff is rightfully in charge of the estate, but admits that it is actually in charge; (4) admits that exhibit "A" to the complaint is a true copy of the will admitted to probate as a last will of decedent, but denies that it is actually a will because of decedent's unsound mind; (5) admits the negative return of complaint and alleges spendthrift clause void; (6) alleges unsound mind of decedent and that signature on the will was traced; (7) alleges undue influence of one Tompkins, a witness to the will; decedent mentally incompetent and acted under undue influence; (8) alleges finding of prior will and sets forth provisions thereof, wherein the said Robert J. Heustis had been willed property outright, of the value of $10,000; (9)

alleges fraud on the court in having the will admitted to probate, perjury, and concealment having been practiced on the court; (10) alleges will admitted without knowledge of defendant; did not know of fraud until six months expired and that the defendant is without funds; (11) alleges she was prevented from contesting the will because of failure of plaintiff and attorneys until six months expired admitting will to probate and that the order admitting will to probate has become final and binding upon defendant and that defendant has been deprived of her rights as a judgment creditor.

The respondents filed a demurrer to the entire second amended answer, a demurrer to the first separate defense and claim for affirmative relief, and then a demurrer to the second separate defense and claim for affirmative relief. A motion was also made to strike certain portions of the second amended answer, which it is not necessary to specifically designate or discuss. The respondent made a motion for judgment on the pleadings and the court granted the motion to strike, sustained the demurrer and granted judgment on the pleadings, declaring that the defendant had no right to subject the funds in the hands of the trustee to the payment of her judgment. We will simply be concerned with the judgment of the court denying the defendant any relief because the demurrers, motions to strike and motion for judgment on the pleadings all raise the same issue. If there are any issuable facts stated in the answer it would have been error to have granted any of the motions (*Felch* v. *Beaudry,* 40 Cal. 439). It is quite apparent, however, from the reading of this answer, that it presented nothing but an issue of law. █ As to the attempt in the second and separate defense to thus attack collaterally the will of Caroline Heustis very little may be said. Appellant has no standing to contest the will because she is not a party interested as specified by the code, section 370 of the Probate Code, formerly section 1307 of the Code of Civil Procedure. (See *State* v. *Superior Court,* 148 Cal. 55 [2 L. R. A. (N. S.) 643, 82 Pac. 672].) If she could not contest the will before probate, of course she could not afterward. Appellant was not an heir of deceased nor legatee under the will. She was a mere stranger, and was not entitled to any notice of the probate proceedings. (Pro-

bate Code, sec. 327, formerly sec. 1303, Code Civ. Proc.; Probate Code, sec. 328, formerly sec. 1304, Code Civ. Proc.)

■ Furthermore, a proceeding admitting a will to probate is a proceeding *in rem* and the judgment is final and conclusive after the expiration of six months from the time it was admitted to probate, except as to minors and lunatics. In *Tracy* v. *Muir*, 151 Cal. 363, at 372 [121 Am. St. Rep. 117, 90 Pac. 832, 835], it is said:

"By the offer of the will for probate, the proponents tender to the world the issue as to its genuineness. Any person interested may appear and contest the instrument so offered upon various grounds, including all grounds substantially affecting its validity or the question of its due execution. Failing to appear and contest before probate, the right exists for a full year after probate. One who must be held to have had actual notice of the proceedings in time to make his contest, and who fails to take advantage of the opportunity afforded of opposing the will by appearing and contesting within the time allowed by law, must, at least unless he can be held to have been prevented from so appearing and contesting by some fraud of those procuring the probate, he held concluded by the decree as to any matter concerning which he could have obtained relief by a contest. It can be no excuse for his failure to appear and contest that he did not know that the alleged will was not genuine. That it was genuine was one of the very issues tendered him by his adversary, which he was called upon to meet within the time allowed by law or forever thereafter admit." (See, also, *Estate of Baker*, 170 Cal. 578, at 585 [150 Pac. 989]; *Estate of Allen*, 176 Cal. 632 [169 Pac. 364]; *Estate of Henderson*, 196 Cal. 623 [238 Pac. 938].)

■ Finally, if it could be admitted, for the purpose of argument only, that appellant had a right to attack this will for fraud, the allegations contained in her second amended answer set forth not collateral nor extrinsic fraud, but, on the contrary, intrinsic fraud which is not in any case actionable. (*Pico* v. *Cohn*, 91 Cal. 129 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537]; *Langdon* v. *Blackburn*, 109 Cal. 19 [41 Pac. 814]; *Tracy* v. *Muir*, *supra*.)

It should be borne in mind in connection with the cases cited on this branch of the case that time governing contests of wills for probate has been changed from one year

to six months. The pleadings herein show that appellant had knowledge of the admission to probate of this will within less than three months after it was admitted. As to that part of the answer seeking to set aside a deed, how this could be done without the grantee of the deed being a party, we are not advised, but if the deed was set aside, the property conveyed therein would fall back into the estate and pass under the will. (*Nicholson* v. *Leatham*, 28 Cal. App. 597, at 608 [153 Pac. 965, 155 Pac. 98.) What has been said disposes of this branch of the case adversely to the appellant.

This now brings us to the only question in the case that calls for serious consideration, that is, whether the appellant wife is entitled to collect her judgment from the funds of the trust estate. This requires a construction of the will as a whole. The will hereinbefore set forth appoints the respondent as executor of said will, and after directing the payments of debts, gives all of her estate of every kind and wherever situated to the respondent to be held in trust for the following purposes, that is, ''that the said trustee shall pay to my son Robert J. Heustis from the income or principal or both of the said trust estate one hundred and fifty dollars each calendar month during the life of this trust, and the beneficiary of the trust is restrained from any right, power or authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate or in any other manner affect or impair his beneficial and legal rights, titles, interests, claims and estates in and to the income and/or principal of this trust during the entire term thereof, and that the rights and interests of the beneficiary hereunder shall not be subject to claims of creditors, nor subject nor liable to any process of law or court, and all the income and/or principal under this trust shall be transferable, payable, and deliverable only, solely and exclusively and personally to the above-designated beneficiary thereunder, and that the personal receipt of the designated beneficiary is required as a condition precedent to the payment or delivery of same by the said trustee to such beneficiary''. It then provides that ten years from the date of filing of the will for probate the trust shall cease and the entire trust estate shall go and be by the trustee conveyed, transferred and delivered in fee to the said Robert J. Heustis. From the

above it will be seen that the trust is a strict unlimited trust executed by a mother in favor of her son and only heir at law. The mother was under no obligation, either legal or moral, to maintain the wife of her son, and had a right to dispose of her property as she saw fit. The question of spendthrift trusts first came before the Supreme Court of this state in *Seymour* v. *McAvoy,* 121 Cal. 438. At page 442 [41 L. R. A. 544, 53 Pac. 946, 947], it is there said:

"By the great weight of authority in America, it is settled that the author of a trust to pay to or to apply for the benefit of another the income of property, or a portion of such income, may lawfully provide that the interest of the beneficiary shall not be assignable, or shall not be subject to the claims of his creditors. Out of the many decisions to this effect we may refer to *Nichols* v. *Eaton,* 91 U. S. 716 [23 L. Ed. 254]; *Steib* v. *Whitehead,* 111 Ill. 247; *Broadway Bank* v. *Adams,* 133 Mass. 170 [43 Am. Rep. 504]; *Roberts* v. *Stevens,* 84 Me. 325, 331 [17 L. R. A. 266, 24 Atl. 873]; *Lampert* v. *Haydel,* 96 Mo. 439, 446 [9 Am. St. Rep. 358, 2 L. R. A. 113, 9 S. W. 780]; *Jourolmon* v. *Messengill,* 86 Tenn. 81, 100 [5 S. W. 719]; *Garland* v. *Garland,* 87 Va. 758 [24 Am. St. Rep. 682, 13 L. R. A. 212, 13 S. E. 478]; *Overman's Appeal,* 88 Pa. St. 276, 284; *Maryland etc. Agency* v. *Lee,* 72 Md. 161 [19 Atl. 534]; *Wallace* v. *Campbell,* 53 Tex. 229; *Wales* v. *Bowdish,* 61 Vt. 23 [4 L. R. A. 819, 17 Atl. 1000]."

And in *McColgan* v. *Magee, Inc.,* 172 Cal. 182 [Ann. Cas. 1917D, 1050, 155 Pac. 995], this doctrine was reaffirmed. It is there said at page 186:

"The general doctrine that spendthrift trusts, inalienable by the beneficiary and inaccessible to his creditors during his life or for a term of years, are valid in this state, is well established. (*Seymour* v. *McAvoy,* 121 Cal. 438, 442 [41 L. R. A. 544, 53 Pac. 946].) The doctrine that property may be made inalienable by such declaration of trust rests upon the theory that a donor has the right to give his property to another upon any condition which he sees fit to impose, and that, inasmuch as such a gift takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the

property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors. For this reason, and upon grounds of public policy, it is further held that one cannot by any disposition of his own property put the same or the income thereof beyond the reach of his creditors, so long as he himself retains the right to receive and use it. This qualification of the doctrine is as well settled as the doctrine itself. In *Seymour* v. *McAvoy, supra,* referring to the first branch of the proposition above stated, the court said: 'There is nothing in the policy of the law prohibiting a donor from providing that his bounty shall be enjoyed by those to whom he intends to extend it, and that the property devoted by him to a trust otherwise valid shall not be diverted from its appointed destination.' In *Pacific Nat. Bank* v. *Windram,* 133 Mass. 175, the court said: 'Creditors of the beneficiary have no right to complain that the founder did not give his property for their benefit or that they cannot reach a greater interest in the property than the debtor has, or ever had.' "

The same general doctrine prevails in other states of the Union. Appellant contends that the trust is void as against the wife upon the grounds of public policy; that is, by reason of the relation of husband and wife she stands in some position apart from other creditors, and relies chiefly upon the case of *Re Estate of Mary H. Moorhead,* 289 Pa. 542 [52 A. L. R. 1251, 137 Atl. 802]. This case does lend some support to appellant's claim, but the court in that case was compelled to labor exceedingly hard to arrive at the conclusion which it did, and when carefully read the case is distinguishable from the instant case. The trust provision in the Moorhead case, *supra,* reads:

"I will and direct that neither the income payable to my grandson, William H. Watt, nor the *corpus* from which the same is derived, shall be liable to or for the contracts or debts of said William H. Watt, or to execution or attachment at the suit of any of his creditors; but shall be absolutely free from the same, and he shall have no power to sell, assign or incumber the same or any part thereof, or to in any way anticipate the said income."

The trust in the instant case contained this provision: "nor subject nor liable to any process of law or court, and all of the income and/or principal under this trust shall be

transferable, payable and deliverable only, solely, exclusively and personally to the above-designated beneficiary hereunder at the time entitled to take the same under the terms of this trust, and the personal receipt of the designated beneficiary hereunder shall be a condition precedent to the payment or delivery of same by the said trustee to said beneficiary.''

The conclusions in the Moorhead case, *supra*, were arrived at by a construction of the whole will as noted from the language in the opinion, wherein it is said at page 804, 137 Atl.:

''Construing this will, then, as a whole and giving adequate attention, in conjunction with the examination of its terms, to the circumstances attending testatrix, and which concerned her, we are unable to avoid the conclusion that when she hedged in the trust in favor of her grandson with the restrictive words employed, she had in mind only contracts or debts ordinarily made and incurred in usual contractual or financial transactions. Undoubtedly she meant to create a spendthrift trust. Her purpose in this is manifest, as it is obvious in practically every instance of the creation of similar trusts, viz.: to protect the object of her bounty from wasting his income by his extravagance and dissipation; and certainly the career Moorhead followed and has continued to follow furnishes ample justification for these protective inhibitions. But that it was her intent to deliberately enable him to unlawfully deprive his family of the necessary care, protection and support which by law he owed them, neither the terms of the will nor the circumstances attending testatrix at the time of making it permit. The very fact that the name of the wife of her grandson is not mentioned is in itself evidence that such a contingency was not in the mind of the testatrix. Determined as she was to protect her grandson from the effects of his own folly and extravagance in his relations with people in general, would she not, had she intended to include the wife within the range of the trust inhibitions as to contracts and debts, have added a provision to that effect? It will be informing to give attention to dates and events relative to and connected with the execution of the will. It bears date June 13, 1903. The codicil by which she surrounded the trust with restrictions against the liability of her grandson for contracts and debts was added January 21, 1905.

The testatrix died August 21, 1908. The marriage of her grandson took place May 4, 1903. It will thus be seen that the will and codicil were both executed subsequent to the marriage, the first less than two months after and the codicil a year and six months later. She continued in life for five years following the marriage, and we find nowhere in the will the slightest intimation of animosity on her part toward the wife of her grandson, and if after a period of five years' association with the young wife, the latter's future welfare and happiness had become in the mind of the testatrix a matter of indifference, assuredly not one word in the will provides the slightest evidence of such unconcern. On the contrary, we find by the terms of the will themselves, and by noting its general tenor of kindness, love and solicitude for those testatrix was leaving, that while she made no direct reference to the wife of her grandson, she had her solicitously in mind when she executed the will. Taking all the clauses and the codicil into consideration, we do not find one expression which breathes other than the most tender regard and anxiety for the well-being of her relatives and friends. That, in fact, is a plain characteristic of the entire document, and hence to reach the intention of the testatrix it becomes necessary to interpret it in this inclusive sense.''

The will concludes:

''I hope you may live an undivided happy ·family, and think of me always as being your devoted and loving grandmother, sister and friend, and hope and expect to meet you *all* on the other shore, where parting is no more, is the wish of one who has tried to make you all happy.''

The court continues:

''That is not the prayer of a woman whose intention was to encourage a grandson in the lawless abandonment of his lawful wife and to exult over the privations, the misery, and the humiliations which she must suffer as the fruits of such desertion. It is to be conceived that this aged woman, her thoughts freighted with the tenderest solicitude for *all* her loved ones—and she herself has italicized the enlightening word *all*—whose large intelligence enabled her to know the full range of meaning of the words used in her will, could have deliberately intended and required that among all those upon whom she left her final friendly benediction, there was one, the young wife of her grandson, upon whom that last

and gentle blessing should not rest? We cannot find in her will any word or phrase that permits even an intimation of so strange an intention.''

It is true the court does say in this case that such a trust as was contemplated there would be against public policy, but it did not base its decision on that ground. That it is the duty of the husband to support his wife of course no one could or would dispute, but the question here is whether this trust estate can be reached for that purpose. The wife has several remedies open to her under the laws of the state of California, and if the husband has property in the state of Texas of his own, of course it can be reached, but it seems that when she obtained a judgment for support and maintenance she became a judgment creditor, and the relation of debtor and creditor exists between her and her husband. (See *Lisenbee* v. *Lisenbee,* 42 Cal. App. 567, 570 [183 Pac. 862]; *Barber* v. *Barber,* 21 How. (U. S.) 582 [16 L. Ed. 226].) There can be no question but that by the great weight of authority she is a judgment creditor.

In the case *In re Wakefield Estate,* 182 Wis. 209 [196 N. W. 541, at page 544], it is said:

''When a divorced wife has her judgment for alimony she is a creditor and entitled to the remedies of other judgment creditors. This rule is sanctioned by the great weight of authority.'' (See, also, *Dow* v. *Blake,* 148 Ill. 76, at page 87 [39 Am. St. Rep. 156, 35 N. E. 761]; *Remmers* v. *Wolf's Estate,* 206 Mo. App. 159 [226 S. W. 290, at page 292].)

In a case reported from Missouri it was held that a judgment of a wife for maintenance not having been recognized by payments thereon after the statutory period was barred by the statute of limitations, and no recovery could be had thereon.

The old common-law doctrine that a husband and wife are one and the same person, which is one of the reasons given in the Moorhead case, *supra,* is of course not the law in California and has not been since the adoption of the codes. It is a contradiction to say a husband and wife are one when the marriage has been disrupted to the extent that one spouse has gone into court and obtained a judgment against the other for support. It must be borne in mind that Anna Heustis had no vested interest in the mother-in-law's property; Caroline Heustis did not even need to give this prop-

erty to her son. She also, under the authorities, had the right to arrange its disposition as she saw fit, provided she violated no law, and we take it that anything that is within the law is not against public policy. Public policy is a very vague and uncertain term and while it has a place in the law, a document should not be construed to contravene public policy unless it clearly appears to be necessary. And if the proposition is sound that a donor of property may arrange for its disposition to suit his will, we see no reason why this cannot be done against one creditor as well as another. It seems to us that the following cases cited by the respondent cover the instant case and are not necessarily contrary to the Moorhead case, *supra*, although they are not mentioned in that case. In *Thackara* v. *Mintzer*, 100 Pa. 151, which was a case in which it appears William G. Mintzer died leaving a will bequeathing his property in trust for his children. The will provided in part, as taken from the above report at page 154, as follows:

"It is expressly my will that the income which I have heretofore directed to be paid to my children respectively, is to be for their respective, sole, separate and exclusive use and benefit . . . so that the same shall not be in any manner pledged, appropriated, disposed of or parted with by anticipation or before the same shall have accrued and become payable; nor be subject to execution, attachment or sequestration, for any debts or liabilities whatever."

Eleanor J. Mintzer, the wife of the son George, obtained a divorce from bed and board and sought to attach the income of George in the hands of the trustee. The lower court decided in her favor and the Supreme Court reversed the lower court. The court said, at pages 154 and 155 of the opinion, as follows:

"It is now attempted to collect by attachment execution, against the plaintiff in error as garnishee of George, the sum now due to the latter under the will of his father.

"An unbroken line of cases from *Fisher* v. *Taylor*, 2 Rawle (Pa.), 33, down to [*Overman's Appeal*] 7 Norris [88 Pa.], 276, has settled the law in this commonwealth, that a father may, by creating a trust in proper form, provide for a son without exposing his bounty to the debts or improvidence of the beneficiary.

"In the will before us the testator, in due and legal form, has expressed such intent in clear and unmistakable language. He created in the plaintiff in error, an active trust. The fund in question was to be kept by him for 'the sole, separate and exclusive use and benefit' of George and not be subject in the hands of the trustee for 'any debts or liabilities whatever of George'.

"It is contended that the character of the debt in this case, on which the attachment issued, is not within the meaning of the testator's exemption. It is for alimony awarded by the court to the wife of George, after a verdict and judgment against him, for a divorce *a mensa et thoro,* in her favor. The attachment issued on a debt of record fixed by judgment and decree. Whether the judgment be for a breach of contract or for a tort, matters not. The testator recognized no such distinction. He impressed on the fund exemption from all kinds of legal process against the trustee, not only for debts, but also for 'all liabilities whatever' of George. Language broader and more comprehensive could not be used. The testator made no distinction between the character of the obligations which might rest on George. He designed to cover all, legal, equitable and moral. If we depart from the clearly expressed will of the testator in this respect, we make a new will instead of enforcing the one he made.

"The question whether George should justly apply the money after it has reached his hands, to the discharge of this obligation, or in case he refuses so to do, what form of legal proceedings may be instituted against him, does not now arise. We are dealing solely with the case of legal proceedings against the trustee, instituted for the purpose of intercepting his action and defeating the trust stamped on the fund by the donor. As the wife of George has become one of his creditors and seeks to enforce her claim by adverse process against the trustee, the debt as well as the proceedings come within the prohibitory clause of the will.''

In *Board of Charities, etc.,* v. *Lockard,* 198 Pa. 572 [82 Am. St. Rep. 817, 48 Atl. 496], it appears that Wm. F. Lockard bequeathed a share of his estate in trust to a corporation for the benefit of his son, Edwin J. Lockard. The trust clause provided as follows:

"All moneys or legacies herein bequeathed are to be paid to the legatees in person, and to no one else, and shall not be assignable or transferable, nor subject nor liable in any way whatever for any debts or obligations of any of said legatees, heretofore or hereafter incurred or contracted or created."

Alida Lockard, wife of Edwin J., the son, served an execution upon the trustee for money due for her maintenance. The lower court ruled in favor of the wife and the Supreme Court reversed the lower court. The court, at page 496 of volume 48 of the Atlantic Reporter, says:

"The general rule of law in Pennsylvania sustaining spendthrift trusts is admitted; but it is strongly urged, upon the ground of public policy, that an exception should be made in the case of a beneficiary having a wife and children dependent upon him for support. If the fund had been attached after coming under the control of the legatee, the action of the court below would have been entirely justified. But the difficulty is that the fund was attached before it was within the control of the beneficiary, and while it was yet in the hands of the trustee. The fund did not originate with the beneficiary, but the bequest was made by another,— the father,—who had a right to bestow his benefactions as he pleased, and in this case, he chose to bestow them upon his son, and his son alone.

"We agree entirely with all that has been said about the duty of the beneficiary to support his wife and child; but that does not authorize interference with the right of another individual to dispose of his own property as he may see fit. In this case, the pressure was prematurely applied. There are methods of reaching the beneficiary directly.

"The general validity of spendthrift trusts in Pennsylvania is thoroughly well settled, and is not now an open question. The present case is ruled directly by that of *Thackara* v. *Mintzer*, 100 Pa. 151. It was there argued that an intention to exempt an income payable to the *cestui que trust* from liability for the support of his family would be contrary to the policy of the law. This court, however, held that no such distinction could be recognized. The testator impressed on the fund exemption from all kinds of legal process against the trustee. He made no distinction between the character of the obligation which might rest upon his son. The court there said: 'If we depart from the clearly

expressed will of the testator in this respect, we make a new will, instead of enforcing the one he made', and it positively refused to sanction any legal proceeding against the trustee instituted for the purpose of intercepting his action and defeating the trust stamped on the fund by the donor. . . .

"In the present case the testator was extremely careful to exclude the *cestui que trust* from all control of this fund. He provided that the money was to be paid to the legatee in person, and to no one else; that it should not be assignable or transferable, nor subject nor liable in any way whatever for any debts or obligations of any of said legatees. . We are of the opinion, therefore, that a strict spendthrift trust was here created, and that there can be no seizure of the fund in the hands of the trustee. The judgment is therefore reversed. . . . "

And then, in *Kiffner* v. *Kiffner*, (1919) 185 Iowa, 1064 [171 N. W. 590], it appears that the father placed $10,000 in trust for use of his son, the trustee from time to time to make payments for the maintenance of the son. A creditor of the son, the wife with an alimony judgment, levied on the trustee. The trial court found against the creditor and she appeals. The Supreme Court said, at page 591:

"Sufficient to say in general terms that the testator owed no duty legal or moral to provide for the debts of his son; that he had a right to dispose of his own estate as he would; that he had a right to create a trust fund and place the same in the hands of a third party as trustee and to confer upon such trustee such full power over the fund as the testator himself would have had if living; and that he had a right to adopt this course for the very purpose of enabling the trustee to support the improvident son and yet prevent his creditors from appropriating the benefaction. . . . It is true, of course, that when the fund has once passed into the hands of the beneficiary, it becomes his unqualified property, and is subject to the same process in his hands as any other property. But as long as it is withheld from the control of the debtor, it is beyond the reach of the creditor also. . . .

"The plaintiff first sought to reach the fund by garnishment of the trustee. Thereupon this suit was brought in aid of the garnishment. Later the garnishment was dismissed,

and equitable relief alone is now asked. If the grounds upon which plaintiff bases her equity suit are good, we see no reason why she might not have maintained a garnishment on the same grounds. As a ground for equitable relief, she avers that her debtor and the trustee are in collusion against her to prevent the collection of her judgment. This allegation is a mere legal conclusion and an erroneous one. The trustee owes no duty to the creditor. On the contrary, his trusteeship is in hostility to the creditor. He was not bound, therefore, to exercise his discretion in favor of the creditor. Indeed, the clear implication of the condition of the trust was that he should not do so.''

The case of *McColgan* v. *Magee, Inc.*, 172 Cal. 182 [Ann. Cas. 1917D, 1050, 155 Pac. 995], relied on by appellant, simply holds that a person cannot make a spendthrift trust from his own property. Naturally that would be against public policy and void. That a court would be asked to uphold such a trust is the only unusual thing about it. The case specifically affirms the general doctrine of spendthrift trusts. The case of *Wetmore* v. *Wetmore et al.*, 149 N. Y. 520 [52 Am. St. Rep. 753, 33 L. R. A. 708, 44 N. E. 169], is not exactly in point either, for there a clause in the will simply provided that:

'' . . . no person for whose benefit any trust is hereby created shall have power to anticipate or to dispose of any income directed to be paid or applied to the use of such person until the same shall have fully accrued and become payable to such heir, and the trustees of said respective trusts are empowered and requested to disregard and defeat every assignment or other act in contravention of this clause in my will.''

It was also specifically provided in the will that every part of the will was made with reference to existing laws and statutes of the state of New York relating to trusts or trust estates and the disposition of personal estates by will or legal distribution. What was actually held in this case was that under the statutes of New York a trust is created to receive and pay from the income of the personal property; an action may be maintained by a judgment creditor of the beneficiary after the return of the execution unsatisfied to reach the surplus income beyond what is necessary for the suitable support and maintenance of the beneficiary

and those dependent upon him, and that a judgment for alimony in favor of the woman makes her a judgment creditor of her former husband and as such she is entitled to avail herself of all the remedies given by the statute to judgment creditors, and that a wife in whose favor a judgment has been rendered.for alimony may satisfy it out of personal property devised by a trust of the father of her late husband with directions to apply the net income to the support of the son so long as he was living and that a judgment awarding alimony in a suit for divorce, to be paid to the plaintiff for her future support and for her children, makes the husband in effect a debtor, owing the wife the amount adjudged to be paid and entitles her to the same remedies as any other judgment creditor. And where a trust is created in a will and the trustee directed to pay the income for the support of the testator's son, the wife of the latter is included within the equity of the trust and the whole of the trust income, leaving none for the husband, if it appears that he has other estate ample for his support. This case holds at common law the husband and wife are recognized as one and while the trust was made for the benefit of the son, yet owing to their unity of person and his duty to support her, equity would not permit the interposition of other creditors until there is a surplus over and above that which is necessary for the support of himself and his wife and infant children.

Respondent also contends that the judgment of the trial court should be upheld because the beneficiary Robert J. Heustis has only a contingent interest and therefore any levy of the appellant on the funds of the estate is premature and ineffectual. This contention seems to be sound. Under the terms of this will the property could not vest in Robert J. Heustis until after ten years from the date of the filing of the will for probate, and in case of his death before that time the property was devised over to other persons. In other words, if Robert J. Heustis dies at any time before the ten-year period expires, his heirs would not take the property and if he made a will his devisees could not take the property. The case of *Estate of Blake*, 157 Cal. 448 [108 Pac. 287, 289], seems to cover this point. In that case Francis Blake died, leaving his widow and two daughters, Alice S. Blake and Helen F. Witcher, and a granddaughter,

Ethel Pomeroy, then nine years of age, as his only heirs at law. He left a large estate which, by his will, he devised to trustees in trust as follows:

" 'After the payment of the bequests enumerated in article III, I direct my said executrix, executors and trustees to convert the rest and residue of my personal estate, if any there be, into money, and to invest the same in improved real property, and to hold all the rest and residue of my estate and pay over the net income therefrom in equal proportions quarterly to my said daughters, Alice S. Blake and Helen F. Witcher, and my granddaughter, Ethel Pomeroy, until they shall respectively arrive at the age of thirty years, and as each of my said daughters and granddaughter arrives at the age of thirty years she shall have the right to demand and receive one-third of the rest and residue of my said estate as her distributive share thereof, and to have and hold the same to her and her heirs forever, *and if either of my said daughters or granddaughter shall die without issue and before she receives her distributive share of my estate, it is my desire that her share of my said estate shall go to the surviving daughter, daughters or granddaughter as the case may be, share and share alike.*' The portion of the trust we have italicized above was omitted from the decree of distribution which in due course was made in the estate."

The beneficiary, Ethel Pomeroy, married Beach C. Soule and two children were born to them. She died intestate at the age of twenty-seven years, leaving as her sole heirs at law her husband and two minor children. Later the trustee filed her petition for distribution under the trust, setting forth that she did not know to whom the *corpus* of the trust should be distributed and asked the court to judicially determine the question The trial court held that one-third vested in Alice S. Blake, one-third in Helen F. Witcher and one-third in the heirs at law of Ethel Pomeroy Soule, deceased.

The question as stated by this court at page 457 is as follows:

"This brings us to the consideration of the appeal on its merits—the nature of the remainder devised to Ethel Pomeroy—whether it is to be considered as a contingent or vested remainder, and if the former, was there still a devise to the issue of the beneficiary by implication?"

After a preliminary discussion by the court that the cardinal rule of interpretation of a will is that "it is to be construed according to the intention of the testator" (Civ. Code, sec. 1317), the court, at pages 459 and 460, says:

"Now, coming to a consideration of the term of the trust itself, we think that the language of the testator, given its legal import, clearly shows that only a contingent remainder was devised to Ethel Pomeroy and that as far as that question is concerned the trial court properly so held.

"There can be no question as to the rule relative to contingent and vested remainders and the difference between them. The difficulties which have filled the books with dissertations on the subject have arisen in an endeavor to determine from indefinite terms of devise to which class the remainder belongs. The general rule is that where the legacy or devise is given to a person to be paid at a future time, it vests immediately. When, however, it is not given until a future time it is contingent and does not vest until that time occurs. As said in the note to *Goebel* v. *Wolf*, 113 N. Y. 405 [10 Am. St. Rep. 470, 21 N. E. 388], quoted approvingly by this court in *In re Rogers*, 94 Cal. 526, 530 [29 Pac. 962] : 'The leading inquiry upon which the question of vesting or not vesting turns is, whether the gift is immediate, and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age, or surviving some other person, or the like. . . . According to the prevailing doctrine, a postponement of the time of payment will not of itself make a legacy contingent unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened. Thus, where the legacy is given, payable or to be paid when the legatee attains the age of twenty-one years, the legacy vests immediately upon the death of the testator. It is a present gift, the time of payment only being postponed; but where the time is annexed, not to the payment only, but to the gift itself—as when the legacy is given to the legatees at twenty-one, or "if" or "when" he attains the age of twenty-one—the legacy does not vest until the legatee attains that age. His attaining the age specified is a condition prece-

dent; and if the condition be not fulfilled the legacy never vests.'

"Examining the trust provisions of the will under this clear distinction between vested and contingent remainders, and giving to the language used by the testator its proper legal import, we perceive no room for question but that the attainment of the age of thirty years by the beneficiary, Ethel Pomeroy, was made a condition precedent to the vesting of the *corpus* of the trust property in her, both in title and possession, and, hence, the devise was of a contingent remainder.

"This conclusion reasonably follows, whether we look at the provisions of the trust separately or view them collectively. The testator had devised the legal title in the trust property to his trustees and in the first portion of the trust clause, as far as the beneficiaries, including Ethel Pomeroy, are concerned, provided only for the payment to them of the net income of the estate in equal proportions 'until they shall respectively arrive at the age of thirty years'. The meaning of this provision is plain. The trustees simply took the legal title to the trust property to the extent that it was necessary for the fulfilment of their trust duties. There is nothing in it whereby any title was passed to the beneficiaries."

We therefore conclude that the construction the trial court placed upon this will is supported by reason and the weight of authority. The judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.