62 Cal.App.2d 808 (1944)
Estate of F. C. DeLANO, Deceased. PACIFIC GUANO COMPANY (a Corporation), Appellant,
v.
FRANK C. WELLER, as Executor, etc., Respondent.
Civ. No. 14217. 
California Court of Appeals. Second Dist., Div. Three. 
Feb. 7, 1944.
 Harry M. Irwin for Appellant.
 Frank C. Weller, in pro. per., and Craig & Weller for Respondent.
 SHINN, J.
 This is an appeal by Pacific Guano Company from an order which settled the final account of the executor of the estate of F. C. DeLano, deceased, and, except for a few small bequests, distributed all of the remaining estate to a trustee for the benefit of decedent's daughters, Grace DeLano Myers and Ruth DeLano Miller, in accordance with the provisions of an olographic will.
 Appellant filed objections to the account and petition for distribution, in which it alleged that it held a judgment against Grace DeLano Myers, and that it had caused execution to be levied upon her interest in the estate. By this contest appellant sought to subject Mrs. Myers' interest to the lien of the judgment. The controlling issue at the trial was whether the will created a valid spendthrift trust, and the same question is presented on the appeal.
 The trust provisions of the will, from which its nature is to be determined, read as follows: "8. I also have sixty (60) shares of E. S. Miller Laboratories Inc., FCDeL stock, and contracts for the sale of real estate (one to Bertha and Clyde Austin and one to Fern Q. Zillig) now with El Monte branch of The Bank of America N. T. & S. Ass'n for collection, and with this stock and these contracts, I [TEXT STRICKEN]-[di]- do hereby create a spendthrift trust for the purposes hereinafter to be set forth."
 "9. I do give and bequeath unto my two daughters--Grace and Ruth--all the residue of my estate -- -- -- --"
 "Page 2 Fred C. DeLano share and share alike, and suggest that they divide my household and personal effects between them so far as they desire *811 to do so--the balance to be sold and/or anything useful but unsaleable be given to whom they may decide."
 "In the bequests to Grace and Ruth I wish it to be borne in mind that I have advanced to them, and/or to their respective husbands various sums of money at different times, the difference should now be equalized for I love them both equally."
 "10. As to the Spendthrift Trust mentioned on page 2--item 8 of this instrument, I do hereby give, bequeath, devise, assign and set over unto Frank C. Weller of Los Angeles, Cal. (Atty at law) as Trustee, Sixty Shares of the capital stock of E. S. Miller Laboratories, Inc. and those two certain contracts for the sale of real estate to Bertha M. and Clyde E. Austin, and Fern Q. Zillig, which contracts have been heretofore placed with the El Monte branch of The Bank of America N. T. & S. A. for collection, -- -- --"
 "Page 3 Fred C. DeLano in trust, nevertheless, for the purposes herein set forth, towit,--To collect payments when and as due, on sale contracts above mentioned, to collect the dividends, earnings and increase on/of the E. S. Miller Laboratories Inc Stock, if any, and to pay the net proceeds thereof into hands of the beneficiaries of this trust, said beneficiaries being Grace DeLano Myers and Ruth DeLano Miller. -- -- -- -- -- --"
 "The purpose of this trust is to prevent the diversion, subrogation or use of the payments, increase, earnings or principal of said sales contracts or shares of stock, by legal process or otherwise, to pay, satisfy or liquidate, any debts, demands, claims or rights of action of any kind or nature, for which I, if living, would not be liable, and my trustee is authorized, empowered and directed to contest and resist any such action unless or until the court shall otherwise order."
 "The duration of this trust shall F C DeL [TEXT STRICKEN]-[ten (10) years un]- not exceed ten (10) years unless it shall appear to the"
 "Page 4 Fred C DeLano Court that it be to the best interests of the beneficiaries to extend said trust and the Court shall so order."
 "This trust may be dissolved at any time after one year from date of probate, upon petition of both beneficiaries and the trustee and with the approval of the court."
 "Upon the termination of this trust the sales contracts *812 and the shares of stock of any company, or any other assets in the hands of the Trustee, or under his control shall be equally divided between the beneficiaries of said trust after the fees and expenses of the trustee allowed by the court, have been paid."
 The court found that the will created a valid spendthrift trust" and that the said trust is a trust for the maintenance and support of the beneficiaries thereunder, and the income therefrom is payable to the beneficiaries from date of death. ..." The order and decree declared that the purpose of the trust was as stated in paragraph 10 of the will, as quoted above, and other provisions of the trust were carried into the decree of distribution.
 Appellant does not question the statement found in McColgan v. Walter Magee, Inc. (1916), 172 Cal. 182, at page 186 [155 P. 995, Ann.Cas. 1917D 1050]: "The general doctrine that spendthrift trusts, inalienable by the beneficiary and inaccessible to his creditors during his life or for a term of years, are valid in this state, is well established. ( Seymour v. McAvoy, 121 Cal. 438, 442 [41 L.R.A. 544, 53 P. 946].)" See, also, San Diego Trust etc. Bank v. Heustis (1932), 121 Cal.App. 675, at 684 [10 P.2d 158]. Its main contention is that the trust is invalid because it does not specifically provide for the "support, maintenance or welfare" of either of the beneficiaries for any specified term or at all, and has for its sole purpose the defeat of the just claims of the creditors of the beneficiaries.
 [1] We think the court did not err in its construction of the trust. All sums received by the trustee on the real estate contracts, as well as dividends, earnings and increase of the corporate stock, were to be paid into the hands of the beneficiaries. The purpose of the testator to place the corpus and income of the trust property beyond the reach of the creditors of the beneficiaries was expressly stated. That is one of the purposes of spendthrift trusts and it is a lawful purpose. There was no provision against alienation by the beneficiaries of their interests in the trust property, nor did the will specifically declare that the trust was made for their support, maintenance, and welfare, but the purpose of the testator is no less clear because of these omissions. It was disclosed by the use of the term "spendthrift trust," which has a well understood meaning. Such a trust has been frequently defined as "one created for the purpose of providing *813 a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity." (See cases listed in 65 C.J., p. 230, note 50; 39 Words and Phrases, p. 797.) The testator no doubt used the words advisedly, since the will otherwise made it plain that it was his desire that the trust estate be preserved for the benefit of his daughters to the exclusion of their creditors.
 [2] No set phraseology need be employed to create a spendthrift trust. It is sufficient if the intent is reasonably plain upon a consideration of the will as a whole. (Seymour v. McAvoy (1898), 121 Cal. 438, 442 [53 P. 946, 41 L.R.A. 544]; San Diego Trust etc. Bank v. Heustis, supra, 121 Cal.App. 675; Jones v. Harrison (1925), 7 F.2d 461.) [3] It is not necessary that the instrument creating the trust contain all of the restrictions and qualifications incident to spendthrift trusts. (1 Underhill on Wills, p. 695, sec. 529; 3 Page on Wills, p. 829, sec. 1308; Wagner v. Wagner (1910), 244 Ill. 101 [91 N.E. 66, 70, 18 Ann.Cas. 490]; Bennett v. Bennett (1905), 217 Ill. 434 [75 N.E. 339, 341, 4 L.R.A.N.S. 470]; Wallace v. Foxwell (1911), 250 Ill. 616 [95 N.E. 985 50 L.R.A.N.S. 632]; and cases listed in Ann.Cas. 1917B 400.) [4] The courts will not inquire whether the restrictions upon the use of the trust property were necessary for the protection of the beneficiary. (Wagner v. Wagner, supra.)
 [5] The will contained all of the essentials of a valid spendthrift trust. Appellant's argument that one of the essentials is a specific declaration in the instrument that the trust is created for the maintenance, support and welfare of the beneficiaries is answered by the rules of interpretation above stated. Appellant does not go so far as to say that a spendthrift trust, to be valid, must be exclusively for the support and maintenance of the beneficiaries, although the argument that is made, if sound, would lead to that conclusion. The court found, as already stated, that the trust was for the maintenance and support of the beneficiaries. [6] Appellant insists that a finding to this effect was necessary to support the judgment and that it was not justified by the evidence. A complete answer to these contentions is that the so-called finding was no more than a statement of the purpose of the testator as the court understood it from a reading of the will. A finding as to such purpose was unnecessary. The will spoke for itself. (Estate of Blake (1910), 157 Cal. 448, at 456 [108 P. 287].) [7] It is elementary that the intentions of a testator must be ascertained from a consideration *814 of the will in its entirety unless there is uncertainty or ambiguity therein which necessitates resort to extrinsic evidence. There was no such evidence in this case, nor any need for it. [8] Where a so-called finding of fact consists only of the construction which the court places upon an unambiguous written document, no question can arise as to the sufficiency of the evidence to support the finding.
 [9] The trust provisions cannot be construed as an attempt to shield the estate against claims of creditors of the beneficiaries and at the same time to provide for uses to be made of the property other than those which were personal to the beneficiaries; the will contained not the slightest suggestion of such a purpose. Therefore, the question is not presented whether in this state a spendthrift trust would be valid as against claims of creditors of the beneficiaries if it was created for some purpose other than that of providing maintenance and support for the beneficiaries. This was not such a trust. The testator declared that he had advanced to his daughters and their respective husbands various sums of money at different times. The will as a whole evidenced his solicitude for the welfare of his daughters and the trust property was made available for their support and maintenance. [10] In the absence of any other purpose stated in a will or other instrument creating a spendthrift trust, it is to be presumed that it was created for the maintenance and support and, in some cases, the education of the beneficiaries. Such trusts are unique in that they safeguard the beneficiaries against the consequences of extravagance, improvidence and incapacity. In Nichols v. Eaton (1875), 91 U.S. 716 [28 L.Ed. 254, at p. 257], it was said: "Why a parent or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune and even his own improvidence or incapacity for self-protection, should not be permitted to do so, is not readily perceived. These views are well supported by adjudged cases, in the state courts, of the highest character." In Canfield v. Security First National Bank (1939), 13 Cal.2d 1, at page 13 [87 P.2d 830], it was stated that recognized public policy requires that impecunious beneficiaries should be protected from their creditors so as to prevent their becoming public charges. We make reference to these cases only because they point out the distinguishing characteristics which, so far as *815 we have been able to discover, are universally and invariably associated with spendthrift trusts and which are so commonly understood as to have earned for such trusts the descriptive name which they bear. That name alone is sufficient to suggest the purpose to provide security and protection--a purpose which brought such trusts into being and which has been a prime factor in sustaining their validity. [11] Contrary to the contentions of appellant, the trustor's purpose to make the beneficiaries secure in their use of the property, to the extent allowed by law, cannot be defeated by the fact that they may not be in actual need or because the trust property may provide funds in excess of their needs, nor by the fact that the trust fund is not so restricted as to make it impossible for the beneficiaries to use it for purposes other than their support. Whatever the rights of creditors may be under the provisions and the circumstances of specific spendthrift trusts, the probate court is concerned only with questions as to the validity of the trusts, and that depends upon the sufficiency and legality of the expressed purposes of the trustor and not upon the necessities of the beneficiaries or the sufficiency of the testator's reasons for creating the trusts. The argument that it was unnecessary for the testator to provide for the support of his daughters because they were married, aside from involving an obvious non sequitur, is not pertinent to the matter of the construction of the will. The testator had that fact distinctly in mind; and there is no reason why a spendthrift trust cannot be created for the benefit of a married woman.
 [12] Appellant also objected to the executor's request for compensation for extraordinary services, which was allowed in the sum of $425, but this objection must fall because of appellant's failure to successfully attack the trust. The court found that the debts and expenses of administration exceeded the appraised value of all property of the estate that was not included in the trust, and that all money available for distribution had come from collections from the principal and income of the trust estate. It was also found that there was no property distributable to the daughters in excess of that distributed in trust for their benefit. From an inspection of the accounts of the executor it is seen that the trust estate was resorted to for the payment not only of the extraordinary compensation of the executor and other expenses of administration, but also for the payment of a substantial portion *816 of the debts of decedent. Appellant could have no valid objection to payments made from the principal or income of the trust estate.
 [13] The court did not err in holding that the beneficiaries were entitled under the trust to receive the income from the trust property from the date of death, where the will was silent on the subject. (Estate of Platt (1942), 21 Cal.2d 343 [131 P.2d 825].)
 It is unnecessary to consider respondent's contention that the probate court does not possess the power in any event to distribute any part of the estate to or for the benefit of a creditor of a devisee or legatee.
 The order and decree are affirmed.
 Desmond, P. J., concurred.
 BISHOP, J. pro tem.
 I concur in the judgment and in much of the opinion. The question before the trial court was whether or not the trust was a valid one. If it was, the property set aside in trust, and its increase, were properly distributed to the trustee. If it was not a valid trust, then the property intended for the trustee remained a part of the residue of the estate, and the one half of it which belonged to appellant's debtor should have been made subject to appellant's claim.
 Appellant cites no authority and makes no argument which causes me to doubt that the trust was a valid one. Its argument in part seems to be based on the proposition that for one reason and another the interest of its debtor, one of the beneficiaries, in the benefits from the trust, is not exempt from her creditors. If this be so, and it may prove to be true by virtue of section 859, Civil Code, the fact does not affect the validity of the trust but only the extent of its success in endeavoring to thwart the beneficiaries' creditors. The question of the validity of the trust is not to be confused with that of the exemption of the proceeds of the trust. (See Canfield v. Security-First Nat. Bank (1939), 13 Cal.2d 1, 19 [87 P.2d 830].) The finding which, as appellant rightly claims, lacks evidentiary support, that the trust was "for the maintenance and support of the beneficiaries thereunder," appears as an immaterial one, in the present proceeding.