[No. B040458. Second Dist., Div. Four. Aug. 22, 1989.]

WARDLEY DEVELOPMENT INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BANK OF AMERICA, Real Party in Interest.

COUNSEL

Irell & Manella, Harvey I. Saferstein, Steven L. Sloca and William M. Hensley for Petitioner.

No appearance for Respondent.

Buchalter, Nemer, Fields & Younger, Clifford John Meyer, Randolph A. Bain and Jeffrey I. Golden for Real Party in Interest.

OPINION

**WOODS (A. M.), P. J.**—By this original proceeding in mandate, petitioner seeks to compel expungement of a notice of lis pendens recorded in conjunction with a creditor's suit that seeks to satisfy a money judgment by establishing an equitable lien interest against petitioner's real property.

We conclude that the underlying action does not "affect title" to the subject real property within the meaning of Code of Civil Procedure section 409.1[1] and that the lis pendens must be expunged. Our decision in *Urez Corp.* v. *Superior Court* (1987) 190 Cal.App.3d 1141 [235 Cal.Rptr. 837] requires such determination because the underlying action seeks to impress a lien on real property solely as a means to secure payment of a money judgment on a commercial transaction unrelated to the property.

The petition arises from these facts.

In 1985 real party in interest, Bank of America (bank), obtained a default money judgment against M. C. Chuang based upon Chuang's default on a commercial transaction.

In 1988 bank filed the underlying "creditor's suit" pursuant to section 708.210 et seq., to collect on the 1985 money judgment. The action names the judgment debtor, Chuang, and Wardley Development Inc., as defendants.

The complaint alleges that the judgment debtor transferred substantial cash to Wardley, which is allegedly controlled by Chuang's friends and family, for the purpose of defrauding his creditors. It claims that Wardley used the money as part of the purchase price for the real property. Bank seeks a judicial determination that judgment debtor Chuang has some equitable title interest in the real property against which bank may claim an equitable lien or constructive trust to secure satisfaction of its money judgment.

Bank caused notice of lis pendens on the real property to be recorded in conjunction with its creditor's suit.

Respondent denied Wardley's expungement motion and the petition for mandate followed.

The petition contends that the denial of expungement is an abuse of discretion for three reasons: first, bank's interest in the assets allegedly transferred by Chuang to Wardley is limited to a personal property interest in the general assets of the corporation; second, case law precludes use of lis pendens in an action that asserts a lien against real property solely to secure payment of a money judgment; third, lis pendens is unavailable in "creditor's suits" because the statutes controlling such actions provide for pendente lite injunctive remedies but do not mention lis pendens.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## DISCUSSION

■ We find the question whether the underlying creditor's action "affects title" to the subject real property within the meaning of section 409.1 to be determinative. This issue is squarely controlled in petitioner's favor by *Urez Corp.* v. *Superior Court, supra,* 190 Cal.App.3d 1141.[2]

### A.

In *Urez, supra,* 190 Cal.App.3d 1141, a junior trust deed holder's security interest was wiped out by a trustee's foreclosure sale on a defaulted senior trust deed. One of the members of the entity that originally owned the encumbered real property had refused to cure the senior trust deed default and formed a new corporation for the purpose of purchasing the property at foreclosure sale on that trust deed. The wiped out junior lienholder sued the new corporation and its incorporator for fraud. He sought to establish a "beneficial" interest in the real property and to impress an equitable lien or constructive trust by which he could reinstate his security interest and, ultimately, obtain monetary recovery.

In *Urez, supra,* 190 Cal.App.3d 1141, we held that "the 'beneficial' interest real party claims in the subject [real] property is for the purpose of securing a claim for money damages. In our view allegation of this interest is not an action affecting title or possession of real property. [¶]We conclude, therefore, that allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages." (*Urez, supra,* at p. 1149.)

*Urez, supra,* 190 Cal.App.3d 1141, expressly rejects two earlier decisions from the Fourth District (*Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135 [192 Cal.Rptr. 388], and *Coppinger* v. *Superior Court* (1982) 134 Cal.App.3d 883 [185 Cal.Rptr. 24]) upon which bank relies.[3]

---

[2]We accordingly need not resolve petitioner's contention that a judgment creditor seeking to recover cash fraudulently transferred by the judgment debtor to a third party corporation has a lien interest against only the corporation's general assets as a "de facto shareholder" rather than against the specific property into which the cash was converted.

[3]These cases hold that actions seeking to recover money damages through equitable remedies of constructive trust or equitable lien do "affect title" under section 409.1 and support lis pendens.

*Urez,* 190 Cal.App.3d at pages 1147-1148, points out that *Okuda, supra,* 144 Cal.App.3d 135, and *Coppinger, supra,* 134 Cal.App.3d 883, had been narrowly read and expressly criticized by other reported decisions. Division One of this district has followed *Urez* and disapproved *Okuda* and *Coppinger* on this issue. (*Elder* v. *Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313, 1320, fn. 8 [238 Cal.Rptr. 897].)

## B.

Real party bank asserts four arguments in its effort to distinguish *Urez*. We find them unpersuasive.

Bank first asserts that its action for monetary damages seeks lis pendens on the basis of a *"statutory"* lien under section 708.250 and that *Urez* holds only that lis pendens does not "affect title" when used in actions seeking *"equitable* remedies and liens" for ultimate recovery of money damages.

However, this proffered distinction is belied by the California Law Revision Commission comment to section 708.250, which states that the section 708.250 lien is merely the codification of the equitable lien recognized by case law in "creditor's bill in equity" actions (the common law predecessor of today's statutory creditor's suit under section 708.210). (16 Cal. Law Revision Com. Rep. (Dec. 1982) pp. 1509, 1512, and cases cited.) Bank's section 708.250 lien is thus of the same nature as the equitable lien asserted in *Urez*.

In addition, the present statutory scheme controlling creditor's suits (§ 708.210 et seq.) expressly provides for only provisional injunctive protections for the creditor and requires creditors to make a stronger evidentiary showing of entitlement than before. (Cf. § 708.240 with former § 720.) This addition of a stricter requirement for injunctive protection against pendente lite transfers by property holders runs contrary to bank's argument that the Legislature contemplated the use of lis pendens in conjunction with any and all creditor's actions against real property.

Finally, the proffered distinction between "statutory" and "equitable" liens is immaterial under the rationale of *Urez*. As stated in *Urez, supra,* 190 Cal.App.3d at page 1149, the test is whether the action seeks to establish an interest in real property for the purpose of securing payment of the money judgment ultimately sought by the action.

Bank's second claimed distinction of *Urez* is that here bank seeks to establish that its judgment debtor, Chuang, has some equitable title interest in Wardley's real property, while in *Urez* the plaintiff sought only to establish his own equitable lien interest against title. Bank points to our statement in *Urez, supra,* at page 1145, that ". . . an action that affects ownership of the disputed property is a proper action for a lis pendens. . . ." Bank sees this out-of-context excerpt from *Urez* as an acknowledgment that any title dispute between any parties in an action satisfies the "affects title" test.

Consideration of the cited *Urez* statement in context, however, reveals that it is part of a preliminary summary of a general rule, contra-juxtapos-

ing it with the competing rule that "[o]n the other hand, an action for money damages alone will not support a lis pendens." (*Urez, supra,* 190 Cal.App.3d at p. 1145.) Obviously, *Urez* does not conclude that the existence of an equitable title or equiteble lien issue between any parties to an action satisfies the section 409.1 "affects title" criterion.

Moreover, bank may not avoid the *Urez* rule by relying on the fact that bank is one step further removed from a lien against real property than was the *Urez* plaintiff. The title dispute touted by bank is in actuality no more than an additional hurdle that bank must clear just to achieve a position analogous to the starting position of the plaintiff in *Urez*. In *Urez* the alleged fraudulent transferee had legal title to the subject real property; that plaintiff had only to establish an equitable lien or constructive trust against that title to obtain monetary damages. In contrast, here bank must make the preliminary showing that its debtor has some equitable title interest before bank may apply its lien thereon to recover monetary damages. Thus, although bank's action involves a preliminary title issue, it asserts a lien claim upon the subject real property for the same ultimate purpose as the plaintiff in *Urez*.

Bank's third contention is that *Urez* is materially distinguishable because there the plaintiff had no lien against the real property when he recorded his lis pendens, while here bank had a lien pursuant to section 708.250. From this factual distinction bank concludes that its lis pendens does not violate the *Urez* statement that ". . . the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors. . . ." (*Urez, supra,* 190 Cal.App.3d at p. 1149.)

Again, bank's argument misconstrues the holding and rationale of *Urez*. In *Urez* we were well aware that notice of lis pendens does not transform the recording party plaintiff into a secured creditor. Lis pendens serves only to give constructive notice of the action and has the pragmatic effect of hindering pendente lite transfer of real property. Our quoted concluding statement in *Urez* simply rejects use of lis pendens to hinder alienability of targeted real property during the pendency of an action, where the property is sought solely as res to secure payment of monetary damages.

Bank's fourth effort to distinguish *Urez* portrays that decision as placing critical reliance upon earlier decisions expressing concern that lis pendens raises due process problems similar to those created by an ex parte prejudgment attachment of the defendant's assets. (*Urez, supra,* 190 Cal.App.3d at p. 1148.) Bank concludes that because its section 708.250 lien attached by operation of statute independently of its recordation of lis pendens, no such due process problem exists here.

The answer to this argument is that in *Urez* we did not place such critical reliance upon this due process issue. Rather, we relied upon the legislative history of the lis pendens statutes evincing the intent to narrow its application and preclude its abuse as an unfair lever to force unreasonable settlements. We also relied upon prior decisions rejecting lis pendens in contexts where plaintiffs are really seeking to freeze the real property as a res from which to satisfy a money judgment and where attachment proceedings will provide full prejudgment protection. Finally, we relied upon section 2888 of the Civil Code which provides that a lien does not transfer any interest in title.

Under bank's argument, the due process issue of the taking of significant property interest without prior judicial hearing would simply shift from the lis pendens to the section 708.250 lien, which is created automatically without prior judicial evaluation. To the extent that lis pendens aids the 708.250 lien, the due process question would still concern lis pendens. Bank points out that its money judgment against Chuang is a judicial determination of that debt. That prior judgment is not, however, a judicial adjudication of bank's entitlement to enforce that judgment against Wardley's property.

## C.

Bank's final argument is that lis pendens must be permitted in creditor's suits asserting an equitable interest in real property because section 708.250 creates a lien and recordation of lis pendens is the only way to perfect lien priority by constructive notice. Bank suggests that its lien interest will be defeated by other creditors of Wardley who subsequently record attachment or judgment liens and by Wardley's transfer or encumbrance of the property pendente lite. Implicitly, this argues that *Urez* should not apply to creditor's suits because *Urez* would negate the function of section 708.250 liens.

A critical fallacy in bank's argument is the implicit premise that section 708.250 liens are equivalent to prejudgment attachment liens and judgment liens for purposes of recordation and enforcement of immediate remedies against the encumbered property.

As we have already pointed out, section 708.250 merely codifies the equitable lien recognized by early case law in creditor's "bill in equity" actions. Section 708.250 does not endow such equitable liens with new recordation entitlement or immediate enforcement remedies. The lien secures an as yet unproven claim to an equitable interest and transfers in derogation thereof are not recoverable against the transferor personally, until the equitable claim is established by judgment. (See 16 Cal. Law

Revision Com. Rep. at p. 1512; *Canfield* v. *Security-First Nat. Bank* (1939) 13 Cal.2d 1, 28-30 [87 P.2d 830]; *Nordstrom* v. *Corona City Water Co.* (1909) 155 Cal. 206, 212-213 [100 P. 242]; *Seymour* v. *McAvoy* (1898) 121 Cal. 438, 441 [53 P. 946].)

The cases define the "bill in equity" lien as one created in a judgment creditor by filing a bill in equity to subject equitable assets to the payment of his judgment. The creditor acquires only an equitable lien on such assets and a priority over other general creditors " 'who [have] not already filed such a bill.' " (*Canfield* v. *Security-First Nat. Bank, supra,* 13 Cal.2d at p. 29, quoting *Seymour* v. *McAvoy, supra,* 121 Cal. 438 at p. 441.) Thus, the equitable lien is superior to general creditors or assignees of the property subject to the lien, but no recordation of such lien is mentioned and the lien does not give the judgment creditor an immediate right to compel transfer of the subject property to him. However, the third party holding the property becomes personally liable to the judgment creditor for assets distributed in derogation of the lien. (*Canfield, supra,* 13 Cal.2d at pp. 30-31.) Section 708.250 does not confer any new right to perfect such lien by recordation.

In contrast to section 708.250 liens, which are automatically created upon service of process in the creditor's suit, recordation of attachment orders and judgments is expressly permitted by statute for the purposes of creating lien priority and for permitting immediate judicial enforcement against the subject property. (See §§ 488.500, 488.510, subd. (c), 488.120, 488.315, 697.310 & 700.015.) Moreover, Civil Code section 3146 provides for recordation of lis pendens in an action to foreclose on a mechanic's lien and section 761.010 requires recordation of lis pendens in an action to quiet title. If the legislature intended to provide for such a remedy in creditor's suits, we presume that it would have done so expressly.

There is sound reason why section 708.250 liens should not have the same recordation and levy rights as attachment liens or judgment liens. A section 708.250 lien is based upon an unproven claim to an equitable interest in property. The lien is automatically created in every creditor's suit upon service of process and is not subject to removal prior to judgment in that suit. In contrast, to obtain a prejudgment attachment lien a party must first establish the "probable validity of the claim upon which the attachment is based" (§§ 484.030 & 484.090, subd. (a)(2)). Judgment liens, of course, rest upon a judicial determination of the validity of a claim.

Given these factors, it would be anomalous and unjust to permit immediate recordation of section 708.250 liens to set lien priority over other creditors who must establish the validity or probable validity of their claims before they are entitled to establish lien priority of record. As in the

underlying actions, the initial money judgment that establishes the judgment debtor's obligation to the judgment creditor seldom establishes anything concerning the judgment debtor's interest in property in which a third party holds legal title.

We must reject recordation of lis pendens as a means to obtain lien priority indirectly when such priority may not be obtained directly. As we stated in *Urez, supra,* 190 Cal.App.3d at page 1149, ". . . the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants. . . ."

Our conclusion is consistent with the legislative history of the creditor's suit statutes.

Present statutes relating to creditor's suits only provide for injunctive provisional protection for judgment creditors (§ 708.240) and lis pendens is not mentioned. With regard to injunctions against transfers of subject property to third persons, section 708.240, subdivision (b), creates a new requirement upon plaintiffs to meet the burden of proof imposed by the injunction statutes (§ 525 et seq.). The judgment creditor must now prove the probable validity of his claim and threat of irreparable injury. This stricter burden was imposed to provide "the third person with procedural safeguards that were not present in former Section 720 [the predecessor statute]." (16 Cal. Law Revision Com. Rep. at p. 1512.)

No reason appears to conclude that judgment creditors asserting an equitable lien claim against personal property must meet the increased burden required for injunctive relief but that judgment creditors asserting the same claim against real property have the right to lis pendens irrespective of whether the action meets the section 409.1 criteria.

We find that the provisional protection afforded by section 708.240 injunctions is adequate as against voluntary transfers by the third party property owner. Plaintiffs in ordinary civil actions to enforce equitable lien claims (such as in *Urez*) would also prefer lis pendens over a temporary injunction to prevent pendente lite transfers, but all plaintiffs must satisfy the criteria of the lis pendens statutes to obtain the preferred protection.

## D.

Let a peremptory writ of mandate issue, directing respondent to vacate its order of February 14, 1989, in Los Angeles Superior Court case No. C698104, entitled Bank of America v. Wardley Development Inc., et al.,

which denied petitioner Wardley's motion to expunge lis pendens, and to make a new and different order granting that motion.

George, J., and Goertzen, J., concurred.