[No. D046064. Fourth Dist., Div. One. Sept. 14, 2005.]

JOHN D. CAMPBELL II, as Trustee, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ELISSA JOSEPHINE LA BARRIE, Real Party in Interest.

## COUNSEL

Best Best & Krieger and D. Brian Reider for Petitioner.

No appearance by Respondent.

Law Office of Thomas E. Polakiewicz and Thomas E. Polakiewicz for Real Party in Interest.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Petitioner John D. Campbell II (Campbell), as trustee of the John D. Campbell Trust (Trust), filed a complaint against real party in interest, Elissa Josephine La Barrie. Among other causes of action, Campbell alleged that La Barrie exercised undue influence against his now deceased father, John D. Campbell (John),[1] in persuading him to expend approximately $200,000 in Trust funds to pay for the remodeling of La Barrie's house. Campbell requested the imposition of a constructive trust and an equitable lien on La Barrie's house. Campbell recorded a notice of pendency of action, otherwise known as a lis pendens, on La Barrie's house. A lis pendens is a document recorded with the county recorder's office that gives constructive notice that a "real property claim" has been filed that may "affect . . . title to, or the right to possession of, specific real property . . . ." (Code Civ. Proc., § 405.4.)[2]

La Barrie filed a motion to expunge the lis pendens in which she claimed that Campbell's underlying complaint did not state a real property claim pursuant to which a lis pendens could be recorded. The trial court granted La Barrie's motion. Campbell filed a petition for a writ of mandate in this court requesting that we direct the trial court to vacate its order granting La Barrie's motion to expunge and enter a new order denying the motion. Campbell contends that his claims seeking the imposition of a constructive trust and an equitable lien on La Barrie's house constitute real property claims sufficient to support the recording of a lis pendens. We disagree and deny the petition.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2003, Campbell filed a complaint against La Barrie.[3] Campbell alleged that La Barrie and John had maintained a relationship that included

---

[1] We use this first name for purposes of clarity and intend no disrespect.

[2] All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

[3] In October 2003, Campbell filed a first amended complaint against La Barrie that was identical to the original complaint in all respects relevant to this writ proceeding. We use the term "complaint" to refer to both pleadings.

"dating and mutual companionship" since the mid-1980's. John created the Trust in 1997 and amended it in 1999. Campbell further alleged that John began to suffer "a weakness of mind" in November 2001, when he was 93 years old. Campbell alleged that, also beginning in November 2001, La Barrie started to take advantage of her relationship with John by persuading him to make financial decisions that benefited her. Specifically, Campbell claimed that between November 2001 and August 2002, La Barrie persuaded John to expend approximately $200,000 in Trust funds to remodel a house La Barrie owned on Grandee Place in San Diego (Grandee House). Campbell further alleged that John suffered a stroke in September 2002 and that Campbell became the successor trustee of the Trust shortly thereafter. John died in November 2002.

Among other causes of action, Campbell brought claims for money had and received and conversion against La Barrie. With regard to these causes of action, Campbell claimed that La Barrie owed the Trust at least $215,838.19 in compensatory damages.

Campbell also brought a cause of action entitled, "Constructive Trust Based on Undue Influence." In this cause of action, Campbell alleged that La Barrie had exerted undue influence on John in persuading him to utilize Trust assets to pay for the remodeling of her house. Campbell requested the imposition of a constructive trust and an equitable lien on the Grandee House in favor of the Trust. Specifically, Campbell requested:

"1. . . . [A] determination that La Barrie holds title to the Grandee House as a constructive trustee for the benefit of the Trust, to the extent that assets of the Trust were used to improve the Grandee House in any way;

"2. . . . [A]n order compelling La Barrie to account to the Trust for all of the assets of the Trust used to improve the Grandee House in any way;

"3. . . . [A] further order compelling La Barrie to repay to the Trust the full amount, plus interest, of the assets of the Trust used to improve the Grandee House in any way or, in the alternative, for an order that the Grandee House be sold and the proceeds be used to repay the Trust for all of said assets;

"4. . . . [A] determination that the Trust has an equitable lien against the Grandee House equal to the amount of the assets of the Trust used to improve the Grandee House in any way."

Shortly after filing his complaint, Campbell recorded a lis pendens on the Grandee House. In January 2005, La Barrie filed a motion to expunge the lis pendens. Campbell opposed the motion. On February 25, 2005, the trial court

held a nonevidentiary hearing on La Barrie's motion to expunge. At the conclusion of the hearing, the trial court granted La Barrie's motion to expunge, but denied La Barrie's request for an award of costs and attorney fees. That same day, the court entered a formal order expunging the lis pendens on La Barrie's house.

In March 2005, Campbell filed this petition for a writ of mandate. In his petition Campbell claims the trial court erred in granting La Barrie's motion to expunge. In April, La Barrie filed a preliminary response in which she claimed the trial court properly granted the motion to expunge. Shortly thereafter, this court issued an order to show cause as to why the relief requested by Campbell should not be granted. In May, La Barrie filed a verified answer to the petition and Campbell filed a reply.

III.

DISCUSSION

A.  *Campbell's prayer for the imposition of an equitable lien in the underlying complaint is not a real property claim within the meaning of sections 405.4 and 405.20*

Campbell claims his request for the imposition of an equitable lien on La Barrie's house states a "real property claim" pursuant to sections 405.4 and 405.20 sufficient to support the recording of a lis pendens. He claims the trial court erred in granting La Barrie's motion to expunge the lis pendens pursuant to section 405.31.

  1.  *The law of lis pendens*

■  This court set forth the history and purpose of lis pendens statutes in *La Paglia v. Superior Court* (1989) 215 Cal.App.3d 1322, 1326 [264 Cal.Rptr. 63] (*La Paglia*), abrogated on another ground by *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1258 [82 Cal.Rptr.2d 85, 970 P.2d 872]:

"At common law the mere existence of a lawsuit affecting real property was considered to impart constructive notice that anyone who acquired an interest in the property after the suit was filed would be bound by any judgment in that suit. [Citation.] To ameliorate the harsh effect of the common law rule, Legislatures enacted lis pendens statutes to limit the constructive knowledge of pending claims to those instances where a notice of lis pendens was recorded. [Citation.]

"In California, a notice of lis pendens gives constructive notice that an action has been filed affecting title or right to possession of the real

property described in the notice. [Citation.] Any taker of a subsequently created interest in that property takes his interest subject to the outcome of that litigation."

■ The Supreme Court outlined the law governing the statutory scheme pertaining to the recording of a lis pendens and the procedure applicable to expunging an improperly recorded notice in *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 [15 Cal.Rptr.3d 805, 93 P.3d 395] (*Kirkeby*):

"A lis pendens may be filed by any party in an action who asserts a 'real property claim.' (Code Civ. Proc. § 405.20.) [Fn. omitted.] Section 405.4 defines a ' "Real property claim" ' as 'the cause or causes of action in a pleading which would, if meritorious, affect . . . title to, or the right to possession of, specific real property. . . .' 'If the pleading filed by the claimant does not properly plead a real property claim, the lis pendens must be expunged upon motion under CCP 405.31.' [Citation.]

■ "Section 405.30 allows the property owner to remove an improperly recorded lis pendens by bringing a motion to expunge. There are several statutory bases for expungement of a lis pendens, including [that the] claimant's pleadings, on which the lis pendens is based, do not contain a real property claim. (See § 405.31.) [Fn. omitted.] Unlike most other motions, when a motion to expunge is brought, the burden is on the party opposing the motion to show the existence of a real property claim. (See § 405.30.)"

■ The *Kirkeby* court also discussed the law governing a trial court's determination of a motion to expunge under section 405.31 and the standard of review applicable on appeal: "Section 405.31 provides: 'In proceedings under this chapter, the court shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim.' In making this determination, the court must engage in a demurrer-like analysis. 'Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim.' [Citation.] Review 'involves only a review of the adequacy of the pleading and normally should not involve evidence from either side, other than possibly that which may be judicially noticed as on a demurrer.' [Citation.] Therefore, review of an expungement order under section 405.31 is limited to whether a real property claim has been properly pled by the claimant. [Citation.]" (*Kirkeby, supra,* 33 Cal.4th at pp. 647–648; accord, *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 957 [89 Cal.Rptr.2d 693] (*BGJ Associates*) [applying

"demurrer-like review pursuant to section 405.31 of whether the pleading states a 'real property claim' "].)

### 2. *A request for the imposition of an equitable lien does not support the recording of a lis pendens*

#### a. *Existing case law*

◼ "An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property. [Citation.] It may arise from a contract which reveals an intent to charge particular property with a debt or 'out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' [Citation.] 'The basis of equitable liens is variously placed on the doctrines of estoppel, or unjust enrichment, or on the principle that a person having obtained an estate of another ought not in conscience to keep it as between them; and frequently it is based on the equitable maxim that equity will deem as done that which ought to be done, or that he who seeks the aid of equity must himself do equity.' [Citation.]" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 453 [61 Cal.Rptr.2d 707].)

A number of California courts have considered whether a complaint seeking the imposition of an equitable lien or other equitable security interest in real property constitutes a real property claim under the lis pendens statutes. The majority of these courts have concluded that a claim that seeks an interest in real property merely for the purpose of securing a money damage judgment does not support the recording of a lis pendens. (E.g., *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1862 [37 Cal.Rptr.2d 63] (*Lewis*); *La Paglia, supra,* 215 Cal.App.3d at p. 1329; *Wardley Development Inc. v. Superior Court* (1989) 213 Cal.App.3d 391, 394 [262 Cal.Rptr. 87] (*Wardley*); *Urez Corp. v. Superior Court* (1987) 190 Cal.App.3d 1141, 1149 [235 Cal.Rptr. 837] (*Urez*); but see *Okuda v. Superior Court* (1983) 144 Cal.App.3d 135, 141 [192 Cal.Rptr. 388] (*Okuda*); *Coppinger v. Superior Court* (1982) 134 Cal.App.3d 883, 891 [185 Cal.Rptr. 24] (*Coppinger*).) The California Supreme Court has yet to decide the issue. (*Kirkeby, supra,* 33 Cal.4th at p. 650, fn. 7 ["Because it is not presented in this case, we do not address the question of whether a claim that seeks to impose a constructive trust or equitable lien may be a basis for a lis pendens"].)

In *Urez, supra,* 190 Cal.App.3d at pages 1143–1144, the real party in interest held a defunct second trust deed on real property acquired by the petitioner at a foreclosure sale. Real party brought an action against the petitioner alleging, among other causes of action, fraud and deceit in the acquisition of the property. Real party sought, among other remedies, a lien

against the property sufficient to secure payments due under the defunct trust deed. (*Ibid.*) Real party recorded a notice of lis pendens on the property, and the trial court denied petitioner's motion to expunge. (*Ibid.*) Petitioner sought a writ of mandate in the Court of Appeal directing the trial court to expunge the lis pendens. (*Ibid.*)

In determining whether real party's claim in the underlying action could support the recording of a lis pendens, the *Urez* court began its analysis by noting that the "history of the lis pendens legislation indicates a legislative intent to restrict rather than broaden the application of the remedy." (*Urez, supra*, 190 Cal.App.3d at p. 1145.) Such legislative efforts stemmed from "the ease with which a lis pendens can be recorded and the serious consequences flowing from it." (*Ibid.*) A lis pendens clouds title to the property and effectively prevents its transfer until the litigation is resolved or the lis pendens is expunged. (*Ibid.*)

The *Urez* court noted that a lis pendens can be maintained only in an action that "affects 'title to or right of possession of the real property described in the notice,' " but observed that there had been no "definitive interpretation" of this statutory language. (*Urez, supra*, 190 Cal.App.3d at p. 1145) In describing the case law interpreting this language, the *Urez* court stated, "On the one hand, it is clear that an action that affects ownership of the disputed property is a proper action for a lis pendens notice. . . . [¶] On the other hand, an action for money damages alone will not support a lis pendens." (*Ibid.*)

In applying this law, the *Urez* court described the underlying action as to which the real party filed the lis pendens, as follows: "It is essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. Real party does not claim any ownership or possessory interest in the subject property. . . . [¶] . . . [¶] . . . At bottom, the 'beneficial' interest real party claims in the subject property is for the purpose of securing a claim for money damages." (*Urez, supra*, 190 Cal.App.3d at p. 1149.)

The *Urez* court also noted that the interest real party was seeking in the underlying action did "not go to legal title," and that, "[e]ven before foreclosure, real party was a lienholder whose lien did not transfer any interest in title." (*Urez, supra*, 190 Cal.App.3d at p. 1149, citing Civ. Code, § 2888.)

The *Urez* court concluded that claims that seek merely an interest in real property "for the purpose of securing a claim for money damages" (*Urez, supra*, 190 Cal.App.3d at p. 1149), are not claims affecting title sufficient to support the recording of a lis pendens: "We conclude . . . that allegations of

equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes." (*Ibid.*)

This court addressed whether a claim seeking the imposition of a constructive trust constituted an action affecting title to real property in *La Paglia, supra*, 215 Cal.App.3d at page 1324. In *La Paglia*, a landowner's assignee (Rey) sued a lessee, a mining company, for wrongfully withholding royalties on the sand and gravel mined on the landowner's land. Rey alleged the lessee had used $1.5 million in wrongfully withheld royalties to purchase a separate piece of real property (the Riverside property). (*Ibid.*) Rey sought the imposition of a constructive trust on the Riverside property and recorded a lis pendens against it. (*Ibid.*) The trial court denied the lessee's motion to expunge the lis pendens and the lessee sought a writ of mandate from this court. (*Id.* at p. 1325.)

In determining whether Rey's claim could support the recording of a lis pendens, the *La Paglia* court emphasized that Rey sought imposition of a constructive trust to secure the collection of money damages: "Rey does not claim any present right to title or possession of the property over which it seeks to impose a trust. . . . Rey claims an interest in the defendant's property only to the extent the monies it alleges were wrongfully obtained have been invested therein. The Riverside property is in no sense unique to Rey and its claims can be totally satisfied by a money judgment. Even assuming Rey prevails in the lawsuit, title and possession of the property will not necessarily be affected if the defendant satisfies the money judgment." (*La Paglia, supra*, 215 Cal.App.3d at p. 1327.)

Following *Urez*, the *La Paglia* court concluded that such allegations were insufficient to support the recording of a lis pendens: "We believe the reasoning in *Urez* is persuasive. *Urez* is consistent with the history of lis pendens statutes and the need to prevent abuse. As applied to the facts in this case, the rationale adopted in *Urez* bars use of a notice of lis pendens. Although Rey argues that it is illogical to allow a plaintiff to assert an action for constructive trust and then defeat the plaintiff's recovery by allowing the defendant to transfer the property away to a bona fide purchaser during the pendency of the action, we do not believe the lis pendens statute offers any solution to this problem. Where, as here, the purpose of the constructive trust is only to secure payment of a debt, the plaintiff, like other creditors must rely upon prejudgment attachment procedures. Accordingly, we conclude the constructive trust Rey has alleged is not an action affecting title to or

possession of the Riverside property within the meaning of [former] section 409.1." (*La Paglia, supra,* 215 Cal.App.3d at p. 1329.)

The courts in *Urez* and *La Paglia* expressly rejected the reasoning and holding of an earlier case, *Coppinger, supra,* 134 Cal.App.3d at page 891, in which the court held that an action seeking the imposition of a constructive trust on real property was an action affecting title to real property within the meaning of lis pendens statutes. (*Urez, supra,* 190 Cal.App.3d at p. 1149 ["reject[ing] *Coppinger*'s broad definition of actions which affect title or possession of real property" (italics added)]; *La Paglia, supra,* 215 Cal.App.3d at p. 1326 ["*Coppinger* was incorrectly decided"].) In reaching its conclusion, the *Coppinger* court relied on the fact that "[a]n action to impose a constructive trust on real property has been held to be an action for the recovery of real property within the meaning of Code of Civil Procedure section 318 prescribing a five-year statute of limitations." (*Coppinger, supra,* 134 Cal.App.3d at p. 891.)

The court in *Urez* also rejected the reasoning of *Okuda*, in which the court followed *Coppinger* (*Okuda, supra,* 144 Cal.App.3d 135). *Okuda* relied on *Coppinger* in holding that an action seeking an equitable lien was akin to a constructive trust and was therefore sufficient to support the recording of a lis pendens. (*Okuda, supra,* 144 Cal.App.3d at p. 141.) The *Okuda* court also reasoned: "[I]t is beyond dispute that an equitable lien is a direct charge or encumbrance upon the property, such that the property itself may be proceeded against in an equitable action and either sold or sequestered, and its proceeds applied in favor of the person in whose favor it exists. [Citation.] Therefore an action to establish or foreclose an equitable lien is clearly one which affects the title or the right to possession of real property." (*Ibid.*)

The courts in *Urez* and *La Paglia* were not alone in rejecting the reasoning of *Coppinger* and *Okuda*. (*Hunting World, Inc. v. Superior Court* (1994) 22 Cal.App.4th 67, 71 [26 Cal.Rptr.2d 923] [noting there have been "a chorus of decisions disagreeing with *Coppinger* and *Okuda*"]; see, e.g., *Wardley, supra,* 213 Cal.App.3d at p. 394, fn. 3 [reasserting *Urez*'s rejection of *Coppinger* and *Okuda*]; *Elder v. Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313, 1320, fn. 8 [238 Cal.Rptr. 897] [rejecting *Okuda*].)

b. *The 1992 amendments to the lis pendens statutes*

In 1992, subsequent to the decisions in *Coppinger* and *Urez* and their early progeny, the Legislature substantially revised California's statutes governing the recording of a lis pendens. In so doing, the Legislature continued the historical trend of "restrict[ing] rather than broaden[ing] the application of the remedy" (*Urez, supra,* 190 Cal.App.3d at p. 1145), by requiring that a lis pendens

be expunged if a court finds that the recording party has failed to establish by a preponderance of the evidence the probable validity of its real property claim. (§ 405.32.) However, as the court in *BGJ Associates, supra,* 75 Cal.App.4th at page 956, noted, "The 1992 legislative revision . . . took no position and left to future judicial development . . . the circumstances under which a pleading supporting a constructive trust [or equitable lien] as to real property constitutes a 'real property claim' so as to justify a lis pendens." Specifically, a comment regarding the section of the statute defining "real property claim" states: "Current law is in conflict regarding the availability of the lis pendens procedure in cases claiming a constructive trust or equitable lien. [Citations.] The definition of 'real property claim' neither includes nor excludes claims of constructive trust or equitable lien. Instead, the law in this area is left for judicial development. Should case law continue to allow use of the lis pendens procedure in cases claiming a constructive trust or equitable lien, any abuse which might have previously occurred should be mitigated by the provisions of CCP 405.32 (requiring proof by the claimant of the probable validity of the claim) and the provisions of CCP 405.34 (allowing the court to require a bond from the claimant). Moreover, the provisions of CCP 409.360 [*sic*, see C.C.P. § 405.8], which continue prior law maintaining the availability of injunction, attachment or other relief in connection with a real property claim, should also reduce any perceived need for availability of the lis pendens procedure in cases involving allegations of fraudulent or deceptive conduct leading to claims for a constructive trust or equitable lien." (Real Property Law Section of State Bar of Cal. com., reprinted at 14A West's Ann. Code Civ. Proc. (2005 ed.) foll. § 405.4, pp. 315–316.)[4]

   c.  *A claim that seeks an interest in real property for the purpose of securing a judgment for money damages is not a real property claim*

We continue to follow the holding of *Urez,* adopted by this court in *La Paglia.* (See also *Lewis, supra,* 30 Cal.App.4th at pp. 1863–1864; *BGJ Associates, supra,* 75 Cal.App.4th at p. 970 [both adhering to *Urez* and its progeny in the wake of the 1992 amendments to the lis pendens statutes].) In addition to the reasons offered in the *Urez* line of cases, the Legislature's disclaimer of any "definitional strictures" (*Lewis, supra,* 30 Cal.App.4th at p. 1864), regarding the meaning of the phrase "real property claim" (§ 405.4) in the 1992 amendments and its acquiescence to judicial doctrinal development in this area, supports our continuing to interpret the phrase in a manner that is consistent with the "history and purpose of the lis pendens statutes"

---

[4] "The Real Property Law Section of the State Bar of California proposed the revision and submitted a report to the Legislature. The comments in the State Bar report were relied upon by the Legislature and indicate the legislative intent." (*BGJ Associates, supra,* 75 Cal.App.4th at p. 955.)

(*La Paglia, supra*, 215 Cal.App.3d at p. 1326). (Accord, *Lewis, supra*, 30 Cal.App.4th at p. 1864 ["In the face of this [State Bar] report and the *Urez* line of decisions, the fact that the Legislature made no definitional change in the statute creates a very strong presumption that it was satisfied with the restrictive interpretation given to the statute by the overwhelming majority of decisions."].)

The history of the common law doctrine of lis pendens and the statutes modifying that doctrine indicate that the doctrine evolved as a method of ensuring that courts could render enforceable judgments in actions whose object was to obtain an interest in a particular parcel of unique property. "Historically, the American statutes providing for recording of a notice of pendency of an action affecting title to or possession of real property were designed to limit, rather than to expand, the common law doctrine of constructive notice. In England, the common law developed the doctrine that transferees and encumbrancers took with constructive notice of title defects asserted in any pending action. The purpose was to prevent frustration of jurisdiction by transfers pendente lite." (*Allied Eastern Financial v. Goheen Enterprises* (1968) 265 Cal.App.2d 131, 132 [71 Cal.Rptr. 126].)

Similarly, as the court in *Newman v. Chapman* (1823) 23 Va. 93, stated, "Without [the common law doctrine of lis pendens], the administration of justice might, in all cases, be frustrated by successive alienations of the property, which was the object of litigation, pending the suit, so that every judgment and decree would be rendered abortive, where the recovery of specific property was the object."

"The doctrine [of lis pendens] is illustrative of the universal presumption that real property is unique, and that its loss is not compensable in money damages." (Comment, *The Use of Lis pendens in Actions Alleging Constructive Trusts or Equitable Liens: Due Process Considerations* (1984) 24 Santa Clara L.Rev. 137, 139 (hereafter *Comment*).) This underlying rationale for the doctrine is reflected in the lis pendens statute itself. A lis pendens must be expunged where "the court finds that the real property claim has probable validity, but adequate relief can be secured to the claimant by the giving of an undertaking." (§ 405.33.) Thus, even where a claim undisputedly affects title to property, a lis pendens must be expunged where the claimant can be made whole by a monetary award. The State Bar report that proposed the 1992 amendments to the lis pendens statutes explained that this provision may apply in the commercial real estate context "where a presumption of uniqueness is often inappropriate." (Real Property Law Section of State Bar of Cal. com., reprinted at 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.33, p. 349 ["The essence of commercial activity is the earning of money; loss of a commercial investment opportunity can normally be offset by a pecuniary award"].)

■ However, where a party seeks title to property, or some other interest dependent upon the uniqueness of a particular parcel of property, the party cannot ordinarily be made whole by money alone. (Civil Code § 3387 ["It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation"]; cf. *La Paglia, supra*, 215 Cal.App.3d at p. 1324.) In such instances, the party's interest cannot be protected by prejudgment attachment procedures, "a remedy by which a plaintiff with a contractual claim to money (*not a claim to a specific item of property*) may have various items of a defendant's property seized before judgment and held by a levying officer for execution after judgment." (*Waffer Internat. Corp. v. Khorsandi* (1999) 69 Cal.App.4th 1261, 1271 [82 Cal.Rptr.2d 241], some italics added.) On the other hand, a plaintiff should not to be able to obtain priority for a claim whose object is a security interest in real property by recording a lis pendens when the original purpose of such notices was to ensure that a plaintiff's unique interest in a particular piece of property would be preserved pending litigation. (See *Urez, supra*, 190 Cal.App.3d at p. 1149 [purpose of lis pendens statute is "not to make plaintiffs secured creditors of defendants"].)

To allow a plaintiff to record a lis pendens in such an instance, as the court did in *Coppinger*, is to expand the use of this procedure beyond its historical purpose. Such expansion is particularly inappropriate given that the Legislature has continually restricted its use because of the ease with which such notices may be recorded and the adverse consequences to a property owner flowing from such recordation. As one commentator noted:

"Unlike the situation in *Coppinger*, when the property is unique to a plaintiff or is the subject of the underlying claim the plaintiff has a significant interest in protecting the particular property. If the property is transferred, pendente lite, the plaintiff could never be fully compensated.

"*Coppinger*, however, allowed a lis pendens in what essentially was an ordinary fraud action. Plaintiff was not claiming title to or possession of defendant's property, but rather was looking to the property to secure a possible money judgment. Read broadly, *Coppinger* opens the door for subtle and creative pleading in any fraud action. By alleging a constructive trust, or even an equitable lien, plaintiff, who at most should be considered only a general creditor, effectively becomes a secured creditor with the availability of a lis pendens." (*Comment, supra*, 24 Santa Clara L.Rev. at p. 144, fn. omitted.)

■ We agree with *Urez* and the cases that follow it that to allow a party to record a lis pendens in a case in which the party seeks only "to freeze the real property as a res from which to satisfy a money judgment" (*Wardley,*

*supra*, 213 Cal.App.3d at p. 397), is not consistent with the history and purpose of the lis pendens statutes and conclude that the *Urez* line of cases is more consistent with the history and purpose of the lis pendens statutes than are *Coppinger* and *Okuda*.

### 3. *Campbell's request for the imposition of an equitable lien on La Barrie's property does not support the recording of a lis pendens*

In his complaint, Campbell requested "an equitable lien against the Grandee House equal to the amount of the assets of the Trust used to improve the Grandee House in any way." In other words, Campbell, sought an interest in La Barrie's real property "for the purpose of securing a claim for money damages." (*Urez, supra*, 190 Cal.App.3d at p. 1149). As in *La Paglia, supra*, 215 Cal.App.3d at page 1327, Campbell's claim is not dependent upon the uniqueness of the defendant's property in the underlying suit, and Campbell will be fully compensated for any damages he has suffered by a money judgment. We conclude such an action does not "affect . . . title to . . . specific real property" (§ 405.4), and, therefore, does not support the recording of a lis pendens. (*Urez, supra*, 190 Cal.App.3d at p. 1149.)

We also reject Campbell's attempts to distinguish the applicability of the *Urez* and *La Paglia* line of cases on the facts of this case. Campbell claims this case is distinguishable from *La Paglia* because La Barrie allegedly wrongfully used misappropriated funds to remodel a house she already owned, as opposed to using the funds to purchase a new piece of property, as in *La Paglia*. Campbell also claims that this case is not an action "essentially for money," because La Barrie used the funds directly to improve her own property.

This distinction is immaterial and finds no support in the case law. "[T]he test is whether the action seeks to establish an interest in real property for the purpose of securing payment of the money judgment ultimately sought by the action." (*Wardley, supra*, 213 Cal.App.3d at p. 395.) In such a case, a lis pendens may not be recorded. (*Ibid.*) This is such a case. Through his complaint, Campbell is seeking money damages and a lien on La Barrie's property to secure those damages. Campbell's request for the imposition of an equitable lien in this case is precisely the type of claim that *Urez* and its progeny hold do not support the recording of a lis pendens. (Accord, *Burger v. Superior Court* (1984) 151 Cal.App.3d 1013, 1019–1020 [199 Cal.Rptr. 227] (*Burger*) [concluding lis pendens could not have been recorded as ancillary to equitable lien claim where plaintiff claimed funds were wrongfully used to improve defendant's property].)

We conclude that Campbell's request for the imposition of an equitable lien on La Barrie's property does not support the recording of a lis pendens.[5]

B. *Campbell's prayer for the imposition of a constructive trust is not a "real property claim" within the meaning of sections 405.4 and 405.20*

Campbell claims his request for the imposition of a constructive trust on La Barrie's house states a "real property claim" pursuant to sections 405.4 and 405.20. We apply the standard of review described in part A.1., *ante*, to Campbell's claim. (*Kirkeby, supra*, 33 Cal.4th at pp. 647–648.)

■ "A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citation.]

■ "The principal circumstances where constructive trusts are imposed are set forth in Civil Code sections 2223 and 2224. Section 2223 provides that '[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.' Section 2224 states that '[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' Under these statutes and the case law applying them, a constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it. [Citations.]" (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990 [41 Cal.Rptr.2d 618].)

In *Burger, supra*, 151 Cal.App.3d 1013, in which the plaintiff alleged that his money had been wrongfully used to improve the defendant's property, the Court of Appeal considered whether a complaint that sought the imposition of a constructive trust on defendant Burger's property constituted a real property claim under former section 409[6] sufficient to support the recording of a lis pendens. In its amended complaint, the plaintiff alleged that it had paid over $83,000 to a second defendant and that the payment was " 'instituted and

---

[5] In light of our adherence to the *Urez* and *La Paglia* line of cases, and our conclusion that the reasoning in those cases is dispositive, we need not consider Campbell's contention that the trial court may have granted the motion to expunge because it felt bound to follow *La Paglia* rather than *Okuda*.

[6] Former section 409 is the predecessor statute to section 405.20.

consummated by fraud on the part of the defendants' who 'have no legal right to or any interest in said money,' that 'said funds have been transmuted in form into the real property and appurtenances presently owned by defendants,' and that for these reasons defendants should be deemed constructive trustees of the real property for [plaintiff]." (*Burger, supra*, 151 Cal.App.3d at p. 1016.) The *Burger* court held that these allegations were insufficient to support the recording of a lis pendens because a constructive trust was not an appropriate remedy under the circumstances. The *Burger* court reasoned: "*Burger*'s property was allegedly *improved* by a third party wrongdoer. . . . [Plaintiff] has neither pleaded nor demonstrated the elements of a constructive trust. 'A constructive trust is a *remedy* used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. The trust is passive, the only duty being to convey the property.' [Citation.] Transfer of [Burger's property] to [plaintiff] is not an appropriate remedy where, as here, only improvements amounting to considerably less than the overall value of the property are involved." (*Burger, supra*, 151 Cal.App.3d at pp. 1017–1018.)

Similarly, the Restatement of Restitution, section 206 provides, "Where a person wrongfully uses property of another in making improvements upon property already owned by the wrongdoer, the other is entitled to an equitable lien but is not entitled to enforce a constructive trust." The comment associated with section 206 explains the reason for this rule: "*b. No constructive trust.* Where a person wrongfully uses the property of another in making improvements upon property already owned by the wrongdoer, the other is not entitled to enforce a constructive trust of the property or of a share of the property, since the property so improved is not acquired by the wrongdoer through the use of the claimant's property. Thus, if a person wrongfully takes money belonging to another and uses it in clearing land owned by the wrongdoer, the claimant is not entitled to an interest in the land in such proportion as the amount of his money so used bears to the value of the land, although he is entitled to an equitable lien upon the land for the amount of his money so used. If the land is subsequently sold he has an equitable lien on the proceeds and he is entitled to receive out of the proceeds the amount of his money which was used in improving the property, but he is not entitled to a share of the proceeds in such proportion as the amount of his money bore to the value of the land." (Rest., Restitution, § 206, com. b.)

We agree with the *Burger* court that a plaintiff may not file a lis pendens on the basis of a complaint that seeks the imposition of a constructive trust on the defendant's property where the plaintiff has failed to adequately plead facts in the underlying complaint that would entitle the plaintiff to such a remedy. (*Burger, supra*, 151 Cal.App.3d at p. 1018; accord, *Pacific Lumber Co. v. Superior Court* (1990) 226 Cal.App.3d 371, 377 [276 Cal.Rptr. 425] ["We need not determine whether *Coppinger* survives because

real party has failed to plead facts which, if proven, would support a constructive trust on the real property."].) We also agree with *Burger* and the Restatement of Restitution that the imposition of a constructive trust is not an appropriate remedy when a defendant improperly uses the property of another to make improvements to property that is not initially owned by the plaintiff. (*Burger, supra,* 151 Cal.App.3d at pp. 1017–1018; Rest., Restitution, § 206.)

Although it is not entirely clear from his complaint, Campbell appears to be seeking at least partial title to the Grandee House by virtue of his request for the imposition of a constructive trust. To the extent Campbell is seeking title to the Grandee House, we conclude that Campbell has failed to adequately plead facts in the underlying complaint that would entitle him to such a remedy. Accordingly, Campbell's request for the imposition of a constructive trust on the Grandee House does not support the filing of a lis pendens. We also conclude that, to the extent Campbell seeks merely a secured interest in La Barrie's property by way of his request for the imposition of a constructive trust, such a prayer for relief does not support the filing of a lis pendens for the reasons stated in part A., *ante.* (See *Burger, supra,* 151 Cal.App.3d at p. 1019 [concluding lis pendens could not have been recorded as ancillary to equitable lien where complaint failed to properly plead elements of constructive trust].)

C. *Attorney fees and costs*

In her preliminary response to Campbell's petition, La Barrie requested that we order Campbell to pay her attorney fees and costs in moving to expunge the lis pendens in the trial court and in opposing this petition pursuant to section 405.38.

The trial court expressly found that La Barrie was not entitled to attorney fees and costs. La Barrie did not seek review of these determinations. We conclude La Barrie may not obtain review of this determination by way of her response to Campbell's writ petition. (Cf. *Transworld Systems, Inc. v. County of Sonoma* (2000) 78 Cal.App.4th 713, 716, fn. 4 [93 Cal.Rptr.2d 165] [concluding party waived right to contest adverse trial court ruling by failing to take cross-appeal].) However, La Barrie is entitled to her costs in this writ proceeding pursuant to the rules governing original proceedings in this court. (California Rules of Court, rule 56(*l*)(1) .)

## IV.

## CONCLUSION

The trial court properly granted La Barrie's motion to expunge Campbell's lis pendens.

## V.

## DISPOSITION

The petition is denied. Campbell shall bear costs in this writ proceeding.

McConnell, P. J., and Benke, J., concurred.

Petitioner's petition for review by the Supreme Court was denied December 14, 2005.