Filed 9/15/14  Carmax Auto Superstores v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CARMAX AUTO SUPERSTORES CALIFORNIA, LLC,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br>        Respondent;<br><br>MICHAEL R. LOSORELLI,<br><br>        Real Party in Interest. | E059594<br><br>(Super.Ct.No. CIVRS1108080)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Janet M. Frangie, Judge.  Petition granted.

Schlichter & Shonack, Kurt A. Schlichter, Steven C. Shonack and Kim Tabin Mann for Petitioner.

No appearance for Respondent.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Real Party in Interest.

In an action brought against it by real party in interest, Michael R. Losorelli, petitioner CarMax seeks writ review of the trial court's ruling denying its motion for summary adjudication on the sole surviving cause of action under the Consumers Legal Remedies Act (CLRA), Civil Code section 1750 et seq.[1] We grant its petition, concluding that the action is barred under section 1782, subdivision (b), in that CarMax made a sufficient offer of correction in response to Losorelli's demand letter.[2]

## FACTS

In May 2011, Losorelli and his then fiancé, Paredes, purchased a 2007 Chevrolet Tahoe from CarMax in Riverside. They financed the purchase through their credit union.

In June 2011, the California Highway Patrol impounded the vehicle because its vehicle identification number (VIN) was false. Losorelli and Paredes complained to CarMax, but allege they met resistance to their demands for reimbursement and damages, including payment for a rental car. CarMax did make an offer for reimbursement of the purchase price, as well as additional costs, and on July 21, 2011, CarMax's legal department sent Losorelli and Paredes a letter asking them to sign a confidential settlement agreement.

---

[1] Statutory references are to the Civil Code unless otherwise indicated.

[2] We deny Losorelli's motion to dismiss the petition on the grounds of untimeliness. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc*. (1997) 15 Cal.4th 51, 64.)

Losorelli apparently balked at signing this agreement and retained an attorney. The attorney, claiming only to represent Losorelli, sent CarMax two letters on July 27, 2011, asserting that it was in violation of the Song-Beverly Consumer Warranty Act (§ 1790 et seq.) and the CLRA. It demanded that CarMax take appropriate corrective action pursuant to section 1782, subdivision (a), within 30 days of the date of the letter. In the other letter, the attorney indicated that his client was entitled to full restitution plus incidental and consequential damages, as well as a civil penalty twice the amount of actual damages, attorney fees, costs, and expenses as provided in the statute. This letter demanded a response within three days.

Daniel G. Bloor, CarMax's assistant general counsel, replied in a letter dated August 2, 2011, expressing regret about the false VIN plate and indicating there were no similarly situated consumers. He also pointed out that Paredes was a co-buyer and that resolution must include her. Bloor stated that CarMax was willing to pay them a full refund that would include a return of the full purchase price, including taxes, title and tags, and any other reasonable, documented costs incurred. Bloor asked that documentation of any additional costs be included. In addition, CarMax offered to pay $500 attorney's fees to resolve the matter.

Losorelli's counsel replied on August 5, 2011, that "CarMax ha[d] not complied with the requirements of the CLRA, Magnusson Moss, nor Song Beverly Consumer Warranty Acts." He indicated that his client would not sign a release for any reason. Counsel also warned that should he not receive a "satisfying offer by today August 5,

2011, we will file a complaint for damages at 4:30 p.m. based upon your client's letter refusing to comply.  Your people have had numerous discussions with my client.  To date, every response defers responsibility and completely fails to compensate my client for CarMax's conduct."  Bloor replied by fax and regular mail on August 5 repeating the offer to resolve the matter with a full refund.

Losorelli filed a complaint on September 7, 2011, seeking damages under the CLRA, among other claims.

Paredes later filed a similar complaint, and the actions were consolidated.

Subsequently, the trial court granted an anti-SLAPP suit to strike one of the two claims under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.)  In February 2013, it granted CarMax judgment on the pleadings on four breach of warranty causes of action in the complaints of Losorelli and Paredes.  These rulings left only three causes of action remaining in each pleading:  for violations of the CLRA, UCL, and for fraud.

CarMax moved for summary judgment/adjudication on these causes of action. The trial court granted summary judgment in its favor against Paredes.  As against Losorelli, it granted summary adjudication of the UCL and the fraud causes of action, as well as on the issue of punitive damages.  It denied summary adjudication of Losorelli's CLRA claim, ruling that there was "a triable issue of material fact as to the extent of [Losorelli's] damages and whether or not the remedy under the CLRA was satisfied." During the course of the hearing, the trial court commented that if it granted summary

adjudication in favor of CarMax on the CLRA count, Losorelli would receive nothing. It acknowledged that CarMax offered to remedy the situation, but made three different proposals, and one included a confidentiality agreement. It noted there was a dispute as to payment for the rental car, and opined that it did not think that Losorelli should have to sign a confidentiality agreement and release.[3]

## DISCUSSION

Under the CLRA, at least 30 days or more prior to commencement of an action, the aggrieved consumer must notify the person alleged to have committed the unlawful practice and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." (§ 1782, subd. (a).) Further, subdivision (b) of this section provides that, "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or *agreed to be given within a reasonable time*, to the consumer within 30 days after receipt of the notice." (Italics added.) "The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible

---

[3] An interesting note is that sometime thereafter, Losorelli went to the CarMax facility and tried to sign the release—apparently because the credit union had not been paid and was demanding payment. CarMax refused to deal with him directly because he was then represented by an attorney. In his formal answer, Losorelli asserts that this belated action constitutes his acceptance of CarMax's proposal, which precludes the latter from invoking section 1782, subdivision (b). Not so. CarMax's response was entirely appropriate as it could not deal with a represented party without the involvement of his attorney, and no evidence was introduced to suggest that his attorney agreed to such a course of action.

5

and to establish a limited period during which such settlement may be accomplished." (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41.)

What more could CarMax do than offer a full refund? That is what CarMax asks, and it is a good question. There had been some disagreement over damages, including rental car costs and the confidentiality agreement, before Losorelli retained counsel. However, after he retained counsel and counsel sent the CLRA demand letter, CarMax twice offered to make a full refund not conditioned upon a confidentiality agreement. CarMax's responses indicated that it was prepared to return the full purchase price, including taxes, title and tags, and other reasonable documented costs. Requesting Losorelli to submit proof of his expenses was not unreasonable, and cannot be construed by itself as disputing his previous claims. Losorelli never responded to CarMax's offer except to assert it was not sufficient, and certainly never provided documentation of other costs. Furthermore, he has never indicated—either in the trial court or in response to this petition—what a satisfying offer would have been.

While CarMax never tendered payment, section 1782, subdivision (b), requires only that it agree to do so within a reasonable time—and it did so. It was certainly not unreasonable for CarMax to have the co-buyer, Paredes, be part of the deal or have some signs of assent from Losorelli's camp before proceeding further.

In his responses to this petition, Losorelli reiterates his complaints that CarMax sold him a vehicle to which it did not have title. This fact is undisputed, but not determinative. The crucial question to be determined by the summary adjudication

6

motion is whether CarMax's response to the CLRA demand letter was an agreement to take appropriate corrective action. We believe it was, and neither Losorelli nor the trial court has explained why it should not be so considered. Since Losorelli presented no contrary evidence on this issue, the trial court erred in finding a triable issue of fact. CarMax's response complies with the statute as it offers to make Losorelli whole, including any reasonable incidental damages. Losorelli's response was to file this action; we conclude this CLRA cause of action is barred under subdivision (b) of section 1782.

In his formal answer, Losorelli contends for the first time that the CLR cause of action alleges entitlement to both actual damages and restitution, and that the "notice and offer to correct" provisions of section 1782, subdivision (b), expressly relate only to an action for damages. It is well established that an argument not raised in the trial court will not be considered for the first time on appeal. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) Even if we were to consider this argument, we would have to reject it. The distinction between a claim for damages and one for restitution is illusory in this case. In his CLRA cause of action, Losorelli is clearly seeking money damages, pleading that he has "sustained and is entitled to actual damages in an amount yet to be determined, including *restitution* of the amount actually paid or payable under the contract, plus prejudgment interest . . . ." The restitution requested in this claim is included with, and should be considered to be part of the damage request. As set forth in *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 699, "[w]hether restitution is in the form of an equitable remedy or legal remedy, the relief is

7

based on a specific amount found owing.  When in law, the plaintiff recovers a sum of money '"to pay for some benefit the defendant had received from him,"' [citation] and when in equity, the plaintiff can seek 'in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" Here, Losorelli was simply seeking a sufficient amount of money to compensate for his losses.  The notice and correction requirement applies to such claims, whether considered to be an equitable or a legal remedy.  The only exemption to the notice requirement is for actions that solely seek injunctive relief (§ 1782, subd. (d))—a remedy that Losorelli does not seek.

Losorelli also raises for the first time the claim CarMax did meet the requirements of subdivision (c) of section 1782[4] so that it is not entitled to summary adjudication under subdivision (b).  Again, we need not consider this contention and, again, we would reject it even if considered.  Section 1782, subdivision (c), applies to class actions under section 1781 only.  While his original demand letter asserted CarMax's practices affected a broad

---

**4** "(c) No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exist:
 (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.
 (2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.
 (3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given."  (§ 1782, subd. (c).)

class of consumers, Losorelli never purported to bring the instant action on behalf of any other similarly situated consumers, not even the co-buyer Paredes.[5]

Losorelli also contends that this court should consider the trial court's rulings on four causes of action other than the CLRA cause of action. These causes of action were for breach of express and implied warranty under the Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Acts.[6] However, these claims were disposed of by a judgment on the pleadings in February 2013. Petitioner failed to seek review of those claims and he cannot do so in opposition to CarMax's writ petition. (*Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 922.)

Losorelli's position is that it would be an absurd result to grant CarMax's petition and, thus, deny him the ability to recover his losses when it is undisputed that he was sold a stolen car. We must point out that he chose to sue under the CLRA, which requires the parties to comply with certain procedures. If Losorelli fails to obtain compensation under this Act, it is the result of the choices he made and the actions he took.

---

[5] Losorelli argues that CarMax itself identified Paredes as another affected consumer, but did not demonstrate in its motion that it ever gave that consumer notice or provided her a correction. In fact, CarMax's response to the demand letters indicated that resolution of the matter must include Paredes as co-owner, indicating that the offer to correct extended to her.

[6] 15 United States Code section 2301 et seq.

DISPOSITION

The previously ordered stay is hereby dissolved.

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to vacate its ruling insofar as it denied CarMax's motion for summary adjudication as to the CLRA cause of action and to issue a new order granting the motion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Each party to bear their own costs.

NOT TO BE PUBLISHED IN OFFICAL REPORTS


MILLER
J.


We concur:


RAMIREZ
P. J.


CODRINGTON
J.


10